HODGDON *v.* BARR.

1. AUTOMOBILES—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Contributory negligence of plaintiff southbound pedestrian who collided with southwesterly bound taxicab near west side of street after latter had turned oblique corner from north *held,* for jury.

2. NEGLIGENCE—VIOLATION OF CITY TRAFFIC ORDINANCE.

Violation of a city traffic ordinance is not negligence *per se,* but is evidence of negligence presentable to the trier of the facts (Detroit Traffic Ordinance No 115–D, §§ 14[b], 16).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur, Automobiles § 452.
[1] Contributory negligence of pedestrian at street crossing as affected by statute or ordinance. 96 ALR 786.
Duty of pedestrian before crossing street to look for vehicles approaching on intersecting street. 9 ALR 1248; 44 ALR 1299.
[3] 5 Am Jur, Automobiles § 282.
[3] Reciprocal duties of drivers of automobiles or other vehicles proceeding in the same direction. 24 ALR 507; 47 ALR 703; 62 ALR 970.

3. AUTOMOBILES—RIGHT TURN—NEGLIGENCE—QUESTION FOR JURY.
    It was error for trial court to charge jury that defendant
    taxicab driver was guilty of negligence as a matter of law
    in failing to keep behind preceding panel truck in making
    right turn with traffic light around oblique corner, where
    there is evidence from which a jury might find that, due to pro-
    trusion of defendant's taxicab behind the truck into
    street from which turn was being made, it was im-
    practicable to keep in right-hand lane and collision
    with plaintiff pedestrian at left of the truck occurred a few
    feet west of 11-foot wide crosswalk which perpendicularly
    crossed street into which taxicab had entered and about
    25 or 30 feet from nearer curb line of street from which
    turn had been made (CL 1948, § 256.318).    .

Appeal from Wayne; Miller (Guy A.), J. Sub-
mitted April 9, 1952. (Docket Nos. 4, 5, Calendar
Nos. 45,194, 45,195.) Decided June 2, 1952.

Separate actions by Catherine Hodgdon and Fred
Hodgdon against Stanley M. Barr and another for
damages suffered when Catherine Hodgdon was
struck by taxicab. Cases consolidated. Verdicts and
judgments for plaintiffs. Defendants appeal. Re-
versed and new trial granted.

*W. J. McBrearty* and *James M. Wienner*, for,
plaintiffs.

*Edward N. Barnard*, for defendants.

SHARPE, J. Defendants, Stanley M. Barr and Jim
Stankye, appeal from 2 judgments in favor of plain-
tiffs, Catherine Hodgdon and Fred Hodgdon. The
judgments are for damages for personal injuries suf-
fered by Catherine Hodgdon in a collision with a
taxicab at or near the intersection of Van Dyke and
Gratiot avenues in the city of Detroit, on August 27,
1948, about 10:50 a. m. ·

Gratiot avenue runs in a northeasterly and south-
westerly direction, while Van Dyke avenue runs in

a more or less northerly and southerly direction. There is a traffic light at each corner of the intersection. Van Dyke avenue has a width of 47 feet; Gratiot avenue has a width of 90 feet, with 2 sets of streetcar tracks in the center of the street.

There is a crosswalk extending across Gratiot avenue. The northerly end of the crosswalk begins approximately 42 feet west of the west curb line of Van Dyke avenue, and runs in a southeasterly direction. The crosswalk is perpendicular to the northwest curb of Gratiot avenue until it reaches the center of Gratiot avenue, when it follows a line parallel to the curb line of Van Dyke avenue. The crosswalk is approximately 11 feet wide. There is a safety zone located to the south of the intersection on Gratiot avenue next to the more southeasterly set of streetcar tracks. The safety zone is just south of the crosswalk.

Plaintiff, Catherine Hodgdon, left the Michigan Bell Telephone office on the northerly side of Gratiot avenue at a point 5 stores west of the intersection of Van Dyke, with the intention of going to the safety zone to take a Gratiot avenue bus. She walked towards Van Dyke on the northerly side of Gratiot avenue to a point at or near the crosswalk. She made observations of traffic conditions on Gratiot avenue, and with the green light in her favor started to cross the northerly half of Gratiot avenue at a point about 42 feet west of Van Dyke avenue.

About this time a panel truck was parked on the westerly side of Van Dyke and north of Gratiot avenue, waiting for the green light; behind the panel truck was a city bus waiting to cross Gratiot avenue and proceed in a southerly direction on Van Dyke; behind the city bus was the Checker cab driven by defendant, Stanley M. Barr. When the light turned green for passage on Van Dyke avenue, the truck proceeded in a southerly direction and turned west

on Gratiot avenue. The city bus proceeded on and across Gratiot avenue. Defendant, Stanley M. Barr, moved up behind the truck, followed it around the corner, then stopped when not completely around the corner, then pulled out and proceeded to the left of the truck and went far enough around the corner to clear the intersection. When the truck approached the crosswalk it stopped and defendant Barr did likewise, as people were crossing in a southerly direction on the crosswalk. While making the crossing plaintiff passed in front of a vehicle that was stopped to let pedestrians cross on the crosswalk. She passed in front of the truck heretofore mentioned, which was also stopped. After passing the second vehicle she was struck by the cab driven by defendant Barr. At this time the cab was traveling at a speed of not to exceed 8 to 10 miles per hour. At the time plaintiff was injured she had reached a, point from 5 or 6 feet to 12 feet north of the northerly car track on Gratiot avenue.

Plaintiff was seriously injured. The cause came on for trial, the issues were submitted to a jury who returned a verdict of $10,000 for Catherine Hodgdon, and $2,000 for Fred Hodgdon, her husband, for expenses incurred.

During the trial and at the close of plaintiff's testimony defendant made a motion for a directed verdict on the theory that plaintiff was guilty of contributory negligence, and a lack of evidence showing defendant Barr guilty of any negligence which was a proximate cause of the injury. The trial court took the motion under advisement under the statute* and later denied it. Defendant appeals and urges that the trial court was in error in failing to grant his motion for a directed verdict at the close of plaintiff's proofs.

---

* CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1951 Cum Supp § 27.1461 *et seq.*).—REPORTER.

The record shows that when plaintiff entered Gratiot avenue on the crosswalk she had the green light in her favor. Before entering Gratiot avenue she made observations for approaching traffic to her left and to her right. Other pedestrians were crossing ahead of her on the crosswalk. Having in mind that PA 1927, No 318, § 18(a), as amended (CL 1948, § 256.318 [Stat Ann 1947 Cum Supp § 9.1578]), provides that in making a right turn a driver shall "approach such intersection in the lane for traffic nearest to the right-hand side of the highway, and in turning shall keep as closely as practicable to the right-hand curb or edge of the highway" and that the Traffic Ordinance No 115–D, §§ 14(b), 16, of the city of Detroit, provide:

"Sec. 14(b). Green alone or 'go'. Vehicular traffic facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn: Provided, that vehicular traffic shall yield the right-of-way to other vehicles lawfully within the intersection and to pedestrians lawfully within a crosswalk at the time such signal is exhibited. Pedestrians facing the green signal may proceed across the highway within any marked or unmarked crosswalk. * * *

"Sec. 16. Operators may make a right turn at all times from the moving traffic lane nearest the right curb when proceeding with traffic, except where prohibited by traffic control devices or traffic officers, provided that the operator shall yield the right of way to pedestrians lawfully within the crosswalk. The operator shall not make a right turn when facing a red traffic control signal unless such turn is permitted by right-turn arrow, or other traffic control devices."

We are of the opinion that the contributory negligence of plaintiff, Catherine Hodgdon, presented a question of fact to be submitted to the trier of facts.

On the question of the negligence of defendant Barr, the court gave the following instructions:

"What are the duties that were imposed upon these parties? I think the logical order to take up for that discussion is what was the duty of the driver of the taxicab, Mr. Barr. He had imposed upon him 3 duties which I think are involved in this case. First, the State statute provides that when a driver of a motor vehicle is making a right-hand turn at an intersection, he must make it from the right-hand avenue or traffic lane of the street off from which he is going, and he must make it into the right-hand lane available to traffic on the street into which he is turning. Therefore, in this case, to apply this case to the undisputed facts as set forth by the defendant, he was going south on Van Dyke avenue. He was behind a truck, and on his testimony, a city bus. They stopped on a red light at the north line of Gratiot avenue. The light changed. The truck ahead turned to the right, and in turning to the right there is evidence to indicate that it had to move out from the curb sufficiently far to miss another vehicle that was parked at the curb between Van Dyke avenue and the east line of the crosswalk marked by that line on the pavement. So that the truck turned to the right into what we might call the second lane, under the defendant's testimony, of traffic. The bus proceeded directly south on Van Dyke, and went out of the picture as it did so. It was then the duty of the defendant driving his taxicab to follow the truck so as to get into the right-hand lane of traffic that was open for use on Gratiot avenue going west. The truck went into that lane. Under the testimony, it did subsequently cross the crosswalk for pedestrians. And, under the State statute it was the duty of the taxi driver to follow the truck in that first lane to the south of the parked car at the north curb of Gratiot avenue. There is no dispute in the testimony that the taxi driver did not do that. On his own testimony, because some cars honked at him

from behind, he went past the rear of the truck which was ahead of him, and then proceeded to make his turn into Gratiot avenue. Now that I consider to be a violation of the duty which is imposed upon him by a State statute, and a violation of a duty imposed by a State statute is in and of itself negligence.

"In further consideration of exactly what was done by the cab driver, Mr. Barr, is the testimony as to where the cab stopped after either it ran into Mrs. Hodgdon, or Mrs. Hodgdon walked into it, which represents the difference between the plaintiff's testimony and the defendant's testimony, because that has a bearing upon the closeness with which the defendant, Barr, followed out his statutory duty to make his turn into the right-hand available lane of traffic. The plaintiff testified that when she was struck she was 5 or 6 feet north of the north rail of the streetcar track. That would put her something like 30 feet or more south of the north curb, and that would put her well out of the second traffic lane going west on Gratiot avenue. The witness Nitz testified that he thought that she was about 12 or 15 feet north of the north rail. The defendant, Barr, testified that his taxicab was at a standstill when Mrs. Hodgdon ran into it. I take it that his left-hand front wheel was about a half a foot or a foot from the north rail of the streetcar track, and that would put the cab,—the right-hand side of the cab,—something like 30 odd feet from the north curb, exactly where Mrs. Hodgdon said that she was struck. The witness, Mrs. Jacobson, who was a passenger in the cab, testified that the cab was 2 or 3 feet north of the north rail. Therefore, there is practically no dispute in the testimony that at the time when Mrs. Hodgdon and the cab came into collision the cab was anywhere from 23 feet south of the north curb of Gratiot, to 30 odd feet south of the north curb of Gratiot. In any event, it was farther south than the State law says it had a right to be in making a right-hand turn. From the undis-

puted testimony in the case, it was the duty of the driver of the taxicab to follow the truck that was ahead of it down the first available traffic lane on the north side of Gratiot avenue. Therefore, on that consideration of that duty, the testimony is conclusive, because there is no dispute about it, that the defendant, Barr, was guilty of negligence because he did not observe the express provisions of a State statute which is part of the State motor vehicle law, and which was in effect at that time and still is in effect.

"That consideration, of course, does not conclusively close the matter as far as he was concerned, because the question of proximate cause is still to be considered. The second duty that he owed was a duty under a city ordinance. If you violate a city traffic ordinance, that violation is not conclusive that you have been negligent the way that a violation of a State statute is; but it is evidence that you have been negligent; and it is evidence from which a jury is justified in finding that you have been negligent. The city ordinance is adopted in accordance with a grant of power from the State legislature to cities to impose traffic regulations. Those traffic regulations must be consistent with the State law. Therefore, the traffic regulation I am about to speak of must be construed as being consistent with the State law I have just been telling you about, which requires people making right-hand turns to stay in the nearest available right-hand lane. The city has laid out, and rightfully, a traffic lane for pedestrians to go across Gratiot avenue from north to south. That traffic lane, as far as its easterly line is concerned, leaves the sidewalk on the north side of Gratiot avenue at a point about 42 feet distant from the junction of the curb line of Van Dyke and Gratiot. It runs at right angles across Gratiot avenue. Van Dyke does not run at right angles across Gratiot. It enters Gratiot at a long oblique angle. Much stress has been laid upon that distance of 42 feet from Van Dyke avenue to the pedestrian cross-

walk. It is to be remembered, and it is in evidence upon the map which has been so much before you, that the east line of the crosswalk converges toward the line of the Van Dyke curb; that is, it converges towards the intersection of Van Dyke and Gratiot, and while it is 42 feet from the northwest curb of Gratiot and Van Dyke at the curb line, when the crosswalk reaches the line of the north streetcar rail, according to the map drawn to scale, the line of the crosswalk is only 10 feet from the west line of Van Dyke; and the distance from the intersection at the point where the collision took place, somewhere between 12 and 5 or 6 feet north of the curb line, instead of being 42 feet, is, by measurement on the map not more than 12 or 13 feet distant from the intersection, about the length of a taxicab.

"The ordinance that I have reference to is one passed by the city council of the city of Detroit. You have heard it read, and it provides that at intersections where there are traffic lights vehicles may make right-hand turns on the green light when, and only when, they can do so without interfering with traffic. 'Traffic' means not only other vehicular traffic. It means also pedestrian traffic, because it is to be borne in mind that even though people are walking upon the streets of the city, they are still citizens, and they have the right to have other people pay attention to their safety, and they have as good a right upon the streets as drivers of automobiles do.

"If this cab driver made a right-hand turn at a time that there was danger that he would interfere with traffic on the crosswalk, he was doing something that the city ordinance forbids. That there was danger of interfering with pedestrian traffic on the crosswalk is evidenced by the fact that Mrs. Hodgdon did come in contact with the right front fender of his taxicab. That is evidence from which you, in connection with the ordinance, may, if you see fit, find that he was guilty of negligence in the way he made a right-hand turn down Gratiot avenue; and

it is evidence from which you would have a right to conclude that he did undertake to make a turn at a time when he could not do so without interfering with other traffic on that intersection.

"The third duty that every automobile driver owes at all times is to keep a sufficiently sharp lookout ahead of him so as to stop his car within the assured clear distance ahead.* That is a duty which means that he must be vigilant enough to see what there is to be seen. That he may not see it is no excuse. If it was visible, and if it was something that was likely to get into the line of his traffic, it was his duty to see what was there to be seen; and he is held liable for any violation of that duty.

"Now as to this case, under that duty imposed upon all automobile drivers upon all highways, is there any evidence of a failure on his part to perform that duty? I think that there is. He testified that the first time that he saw Mrs. Hodgdon was when she stepped out from in front of the truck which was to his right. Mrs. Jacobson testified that she saw Mrs. Hodgdon on the other side of the truck while Mrs. Hodgdon was on the curb, and she saw her step down from the curb, and she saw her upper half as she walked along from in front of the truck, passing from in front of the truck. If Mrs. Jacobson saw that, Mr. Barr could have seen it; and if he did not see it, he is guilty of negligence for not seeing it.

"On these 3 points—in the first place, under the undisputed testimony offered by the defense, he is guilty of negligence as a matter of law because he did not stay in the proper lane of traffic in making a right-hand turn. The evidence is such that the jury would be warranted in finding that he would be guilty of negligence for failing to observe the traffic ordinance as to the right to make a right-hand turn when the green light is in his favor, which is limited to making a right-hand turn when he can

---

* See CL 1948, § 256.305 (Stat Ann 1947 Cum Supp § 9.1565).— REPORTER.

do so without interfering with other traffic. And, the evidence is such as to warrant a finding at your hands, if you see fit, that he is guilty of negligence in not keeping a sufficiently keen outlook ahead of him as a reasonably prudent man would have done under the circumstances as they existed at that time and place. I charge you as a matter of law that on his own testimony he is guilty of negligence for his violation of this statutory duty. You would be justified in finding him guilty of negligence for the violation of the other 2 duties, if you find it necessary to do so, or if you see fit to do so. That is up to you when you come to consider the questions in the case."

Defendant urges that the trial court was in error in charging the jury that defendant Barr was guilty of negligence as a matter of law, in violating the statutory provisions relative to making a right turn at an intersection. In order to get a clear picture of what actually occurred it is necessary to follow the movement of defendant Barr from the time he stopped on Van Dyke to await a green light, to a point on Gratiot avenue where the accident actually occurred.

As defendant Barr traveled south on Van Dyke he stopped behind a Detroit street railway bus and in front of this was a panel truck. As the lights turned green for traffic to move across Gratiot avenue, the panel truck turned right on Gratiot avenue and stopped before it came to the crosswalk. Defendant Barr followed the panel truck as it made its turn on Gratiot avenue, and when the truck stopped, the rear end of defendant's cab extended into Van Dyke avenue. Because defendant's cab interfered with traffic going south on Van Dyke avenue, he, defendant Barr, eased around the truck on its left side and stopped his cab with its front end about midway of the truck, and at a distance of 2 or 3 feet from it.

At this time other pedestrians were passing in a southerly direction across Gratiot avenue on the crosswalk. Plaintiff, Catherine Hodgdon, also was crossing the northerly half of Gratiot avenue at a distance of from 3 to 6 feet west of the crosswalk. When defendant brought his cab to a stop its left front wheel was within 6 inches of the northerly rail of the streetcar track, and across the crosswalk to such an extent that it came in contact with plaintiff, Catherine Hodgdon. It clearly appears that defendant Barr, in his operation of the cab, violated the city ordinance in failing to yield the right-of-way to pedestrians crossing on a crosswalk with the green light in their favor, but violation of a city ordinance is not negligence *per se.* It is, however, evidence of negligence for presentment to the trier of the facts. See *Scott* v. *Dow,* 162 Mich 636, and *Rotter* v. *Detroit United Railway,* 205 Mich 212.

Defendant urges that the court was in error in giving the following instruction to the jury:

"It was the duty of the driver of the taxicab to follow that truck that was ahead of it down the first available traffic lane on the north side of Gratiot avenue. Therefore, from that consideration of that duty, the testimony is conclusive, because there is no dispute about it, that the defendant, Barr, was guilty of negligence."

It is apparent that the above instruction was inspired by CL 1948, § 256.318, which provides that in making a right turn a driver should—"approach such intersection in the lane of traffic nearest to the right-hand side of the highway, and in turning should keep as closely as practicable to the right-hand curb or edge of the highway."

Defendant Barr testified:

"I was to the left of the panel truck. The crosswalk,—I would say, at the time I did that I was

about 25 or 30 feet. The truck stayed there. Then I waited until the street cleared of pedestrians, and pedestrians were going across both ways.  *  *  *

"*Q.* How far back of the panel truck were you? Assume my finger is the panel truck, and you are stopped here. How far were you back of the panel truck?

"*A.* My front end was about the middle.

"I was at a dead stop. I looked to the right. Then the panel truck began moving, and I looked to the left, and started. Then the panel truck was moving, and then I started. Then I looked again to the right, and I saw he was beginning to stop. The panel truck. At around the crosswalk he started to stop, and so did I. I looked and I saw this lady come out from in front of the truck. I had not seen her before. She was coming from around the front of the truck. I was going at that time 8 or 10 miles an hour. When I saw the lady come from in front of the panel truck, I immediately applied my brakes and swung to the left. The panel truck got just about across before he started to stop. He was astride the crosswalk, across the crosswalk. When I saw he proceeded and saw he stopped on the crosswalk, I was 3 or 4 feet west of the crosswalk.

"I did not see this lady at any time up to the time she had appeared in front of the panel truck.

"*Q.* Did you hit her or did she hit you?

"*A.* I would say she walked into the right-hand corner of the cab. She fell immediately and then rolled. She was kind of rolling when I got out of the cab. I am absolutely sure I was not exceeding 8 or 10 miles an hour. I came to a dead stop because I saw her.  *  *  *

"*The Witness:* I was right on the curb before I started to make a turn, 3 or 4 feet from the street curb. After I rounded the corner I was about 12 or 13 feet.

"*The Court:* The right-hand side of your cab was about 12 or 13 feet south of the north curb of Gratiot avenue?

"*The Witness:* After I completed the turn and stopped. That is when I came to a stop.

"*Q.* When that was 13 feet, was the panel truck to the right of you?

"*A.* To the right. I was trying to get distance between the panel truck and me.

"There was the panel truck and me, and that is the way I figure the distance."

LaVerne Nitz, a witness produced by plaintiff, testified:

"*Q. (By Mr. McBrearty):* Tell us, in your own words, how the accident happened. Tell us what you saw.

"*A.* I was standing in the safety zone going east, waiting for a streetcar on Gratiot avenue. Just before the streetcar came a lady was stepping off the curb traveling from north to south. There was a truck parked next to the north curb obstructing her view from crossing the street. After she approached 3 or 4 paces from the curb she looked to the right—her left, to see if there was approaching traffic coming. At that point a taxicab was coming around the corner. She varied to the west of the crosswalk as she was walking. In my opinion they seemed to both hesitate. In other words, the cab slowed down, and then she proceeded too. Then they both had the same idea, and the taxicab driver stepped on the gas, and she walked ahead. I couldn't tell you whether she walked into the right side of the cab, or if the cab struck her, because my vision was obstructed.

"*Q.* When you say 'right side,' you mean the right corner?

"*A.* The right-front fender of the cab.

"*Q.* You don't know whether she walked into it or whether the cab's right-front fender hit her?

"*A.* I couldn't say that, because the side of the cab was obstructing my view.

The witness Nitz also testified that the following statement, given by him and dated April 26, 1950, was true:

"LaVerne Nitz, 14379 Dacosta. Accident, Van Dyke and Gratiot. On August 27, 1948, about 10:50 a.m., I was standing in the eastbound safety zone at Gratiot and Van Dyke when I witnessed an accident in which a Checker cab struck a woman pedestrian with its right-front fender and the woman fell to the pavement, falling to the right of the cab and still in front of the cab but to the cab's right when the cab came to a stop. The woman was not knocked any distance. She just fell down when struck. The light was green for Van Dyke when this happened and the woman started across Gratiot from the north curb and a short distance west of the westerly crosswalk line. She was not between the crosswalk lines when struck. I had noticed this Checker cab pull around the corner off of Van Dyke making a right turn to go west on Gratiot and when the woman was struck the cab was not traveling faster than 8 miles an hour.

"There was a truck to the right of the cab and it was about a half-width of a car from the north curb and was headed west, and whether the truck was in motion before the woman walked in front of it, I couldn't say, but I thought that the woman was going to walk into the front of the truck. She was that close to the front end of the truck, and when I saw the cab going by the truck on its left, I hollered, 'Look out,' as I thought she would be struck. The traffic was moving on Van Dyke when she was struck, and I don't know where the truck came from."

It is signed, "LaVerne N. Nitz."

There is evidence in this case that the distance from the westerly edge of Van Dyke measured on the northerly curb line of Gratiot avenue to the crosswalk is 42 feet, and that the width of the crosswalk is 11 feet; that the easterly edge of the cross-

walk at its intersection with the northerly streetcar rails is approximately 13 feet from the westerly line of Van Dyke avenue; that the point of impact between plaintiff, Catherine Hodgdon, and the cab is a distance of from 5 or 6 feet to 13 feet north of the northerly rail of the car track; that at the moment of impact plaintiff, Catherine Hodgdon, was 5 or 6 feet west of the crosswalk, and defendant Barr was traveling 8 to 10 miles per hour. There is also evidence that he had brought his cab to a stop at the moment of impact. There is evidence that as defendant Barr made a westerly turn on Gratiot avenue, there was a truck standing and facing westerly on Gratiot avenue at a distance of about a half-width of a car from the north curb of Gratiot avenue.

It is evident that the trial court in instructing the jury that defendant Barr was guilty of negligence as a matter of law, had in mind that it was the duty of defendant Barr to keep behind the panel truck as it made a right turn on Gratiot avenue.

"It was then the duty of the defendant driving his taxicab to follow the truck so as to get into the right-hand lane of traffic that was open for use on Gratiot avenue going west."

The statute as above quoted, provides that a driver making a right-hand turn at an intersection shall approach such intersection in the lane for traffic nearest to the right-hand side of the highway, and in turning *shall keep as closely as practicable to the right-hand curb or edge of the highway.*

There is evidence from which a jury could find that it was not practicable for defendant to go to the right of the panel truck, as there was some testimony that the distance between the curb and the panel truck was about a half width of a car. There is evidence that when defendant Barr was behind the panel truck while negotiating the turn, the rear end

of his taxicab extended into Van Dyke avenue, and interfered with traffic going south on Van Dyke avenue. Under these circumstances the action of defendant Barr in making a left turn around the panel truck presented an issue of fact as to whether he violated the statute by failing to get into the right-hand lane of traffic, or whether he kept as close as practicable to the right-hand curb in making the turn into Gratiot avenue. In view of our decision on this issue we do not find it necessary to discuss other issues presented.

The judgment is reversed and remanded for a new trial with costs to defendant.

North, C. J., and Dethmers, Butzel, Carr, Bushnell, Boyles, and Reid, JJ., concurred.