AUTRY v ALLSTATE INSURANCE COMPANY

Docket No. 68325. Submitted July 11, 1983, at Lansing.—Decided
    November 21, 1983. Leave to appeal applied for.

    Eugene Autry suffered injuries when, at 2:45 a.m., the motorcycle
        which he was driving collided with a parked vehicle owned by
        Irish Gaines. The Gaines vehicle was parked in a spot which
        was posted as a no-parking zone after 2 a.m. Autry brought an
        action in Genesee Circuit Court against Allstate Insurance
        Company, insurer of both the Gaines vehicle and of an automo-
        bile owned by plaintiff, seeking no-fault insurance benefits on
        the basis that the parked vehicle exception in the no-fault
        insurance act did not apply because the Gaines vehicle was
        parked in a way which created an unreasonable risk of injury
        to plaintiff. After extensive discovery, the parties agreed to
        submit the question of whether plaintiff's injuries arose out of
        the ownership, operation, maintenance, or use of a motor
        vehicle as a motor vehicle to the trial court for determination.
        Harry B. McAra, J., determined that the parked vehicle excep-
        tion did not apply and that plaintiff's injuries arose out of the
        ownership, operation, maintenance, or use of a motor vehicle as
        a motor vehicle and entered a judgment in favor of plaintiff in
        the amount of the stipulated damages. Defendant appeals.
        *Held:*

        1. The determination of whether a vehicle is parked in such a
        way as to cause an unreasonable risk of injury to others within
        the meaning of the no-fault insurance act is a question of
        statutory construction to be decided by the trial court.

        2. While the violation of an ordinance is evidence of negli-
        gence where it is determined that the purpose of the ordinance
        is to prevent the type of harm or injury suffered, the parking

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Automobile Insurance § 353.
    What constitutes a "motor vehicle" covered under no-fault insur-
        ance. 60 ALR3d 651.
    Validity and construction of no-fault automobile insurance plans.
        42 ALR3d 229.
[2, 4-7, 9] 7 Am Jur 2d, Automobile Insurance § 129.
[3] 57 Am Jur 2d, Negligence §§ 246, 270.
[8] 5 Am Jur 2d, Appeal and Error § 820.

ban in the present case was not designed to prevent injuries to other persons using the road and, accordingly, the violation of that parking ban does not support a determination that the Gaines vehicle was unreasonably parked. Since the Gaines vehicle was parked in a safe and prudent fashion although in the no-parking zone, the parked vehicle exception applies and, accordingly, plaintiff's injuries did not arise out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle.

Reversed.

M. J. KELLY, P.J., dissented. He would hold that it is unnecessary to determine in this case whether the question with respect to the reasonableness of the parking of the vehicle was a question of statutory construction or a question of fact, since it is clear that the trial judge was justified in treating the question in the instant case as being a question of fact. He would hold that the trial judge was not clearly erroneous in his determination that the Gaines vehicle was parked in a way as to cause unreasonable risk of harm or injury to the plaintiff. He would affirm.

### OPINION OF THE COURT

1. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — MOTORCYCLES.

   A motorcycle is not a motor vehicle within the meaning of that term in the no-fault insurance act; however, a motorcyclist involved in an accident which arises out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle may recover no-fault insurance benefits (MCL 500.3101[c]; MSA 24.13101[2]).

2. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — PARKED VEHICLES.

   The question of whether a vehicle is parked in such a way as to cause an unreasonable risk of bodily injury so as to eliminate the application of the parked vehicle exception in the no-fault insurance act is a question of statutory construction to be decided by the trial court (MCL 500.3106[1][a]; MSA 24.13106[1][a]).

3. NEGLIGENCE — ORDINANCES — EVIDENCE.

   Violation of an ordinance is evidence of negligence where the court determines that the purpose of the ordinance is to prevent the type of harm and injury suffered.

4. EVIDENCE — ORDINANCES — PARKED VEHICLES — NO-FAULT INSUR-
   ANCE.

   Ordinances prohibiting on-street parking in the early morning
   hours are not intended to protect drivers but are rather aimed
   at assisting in the identification of abandoned, stolen, or junked
   vehicles or in the cleaning of streets; accordingly, violation of
   such an ordinance is not evidence establishing that an illegally
   parked vehicle was parked so as to create an unreasonable risk
   of harm within the meaning of the parked vehicle exception
   contained in the no-fault insurance act (MCL 500.3106[1][a];
   MSA 24.13106[1][a]).

5. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — PARKED
   VEHICLES — MOTORCYCLES.

   A vehicle which is parked in a safe and prudent fashion even
   though parked in an overnight no-parking zone is not parked in
   such a way as to cause unreasonable risk of bodily injury
   within the meaning of the parked vehicle exception in the no-
   fault insurance act; accordingly, injuries to a motorcyclist who
   runs into such a parked vehicle cannot be said to arise out of
   the ownership, operation, or use of a motor vehicle as a motor
   vehicle (MCL 500.3105[1], 500.3106[1][a]; MSA 24.13105[1],
   24.13106[1][a]).

DISSENT BY M.J. KELLY, P.J.

6. JURY — PARKED VEHICLES — NO-FAULT INSURANCE.

   *The concept of a vehicle being parked in a way as to cause
   unreasonable risk of injury, as that concept is embodied in the
   parked vehicle exception of the no-fault insurance act, is a
   concept which juries would be expected to easily understand
   (MCL 500.3106[1][a]; MSA 24.13106[1][a]).*

7. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — PARKED
   VEHICLES — JUDICIAL CONSTRUCTION — QUESTIONS OF FACT.

   *It is unnecessary to reach the question of whether a trial court's
   determination relative to whether a parked vehicle is parked in
   a way as to cause unreasonable risk of injury within the
   meaning of the parked vehicle exception in the no-fault insur-
   ance act is a question of statutory construction or a question of
   fact where it is clear that the trial court was justified under the
   proof presented in treating the question as a question of fact
   (MCL 500.3106[1][a]; MSA 24.13106[1][a]).*

8. APPEAL — FINDINGS OF FACT.

   *Findings of fact by a trial court sitting as the trier of fact will not*

be overturned on appeal unless clearly erroneous (GCR 1963, 517.1).

9. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — PARKED
   VEHICLES — FINDINGS OF FACT.

   A finding by a trial court that a vehicle was parked in a way as to cause unreasonable risk of injury to others as that concept is embodied in the parked vehicle provisions of the no-fault insurance act is not clearly erroneous where the vehicle was parked in a lane posted as a no-parking zone.

*Collins, Stecco & Wascha* (by *Donald A. Wascha*), for plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Mark W. Thiron*), and *Gromek, Bendure & Thomas* (by *Nancy L. Bosh*), for defendant.

Before: M. J. KELLY, P.J., and R. B. BURNS and R. A. BENSON,* JJ.

R. A. BENSON, J. Plaintiff instituted this action in the Genesee County Circuit Court for no-fault personal injury protection benefits to compensate him for injuries he sustained when his motorcycle collided with a parked automobile. Following extensive discovery, the parties agreed to submit briefs to the trial court on the question of whether plaintiff's injuries arose out of the ownership, operation, maintenance, or use of a motor vehicle within the meaning of MCL 500.3105; MSA 24.13105, and MCL 500.3106; MSA 24.13106. On April 28, 1982, the court issued its opinion resolving this issue in plaintiff's favor. Thereafter, the parties stipulated that plaintiff's damages amounted to $39,217.30. Pursuant to this stipulation, an order of judgment in plaintiff's favor was

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

entered. From this order, defendant appeals as of right.

The following statement of facts is derived from the deposition testimony of the various individuals with knowledge of the incident. These depositions were submitted to the lower court as part of the record from which it was to render its opinion.

On July 7, 1979, at approximately 2:45 a.m., plaintiff's motorcycle collided with an automobile located on the east side of Industrial Avenue in Flint. At the time of the accident, plaintiff was returning home from a pleasure ride. Plaintiff testified that he could not recall whether he had consumed any alcoholic beverages after he left work, sometime between 10:18 p.m. and 12:13 a.m., and the time of the accident.

Lynnann English and Thomas Hunt saw plaintiff turn his motorcycle onto Industrial. Their car and plaintiff's motorcycle stopped for a red light at the intersection of Leith and Industrial. When the light turned green, plaintiff proceeded at 25 to 35 miles per hour, and his motorcycle was swerving from side to side. The witnesses reported that plaintiff narrowly missed a collision with a pickup truck on the left side of Industrial, swerved his motorcycle into the middle of the road, and crashed into a parked car.

Irish Gaines, the owner of the parked vehicle, conceded that he was aware that he had parked the car in an area posted as a no-parking zone after 2 a.m. Mr. Gaines had parked his car at approximately 10:30 p.m., "right next to the curb", when he came to work at the Buick plant at Industrial Avenue and Baker Street. At this time, other vehicles lined the east side of Industrial. Mr. Gaines said that cars parked on Industrial 24 hours a day, despite the no parking signs, and that he was aware of several accidents which had oc-

curred there during the "third shift" which included the hours from 10:30 p.m. to 7 a.m.

Flint Police Officer Gary LaVigne arrived at the scene of the accident at approximately 2:50 a.m. Due to the extent of the damage to Mr. Gaines's car, Officer LaVigne believed the motorcycle had been travelling at a high rate of speed at the time of the impact. Officer LaVigne could not get a statement from plaintiff at the scene. Officer LaVigne later went to the hospital to interrogate plaintiff. However, plaintiff would not cooperate and appeared to be intoxicated. Officer LaVigne testified that he could smell the odor of alcohol on plaintiff's breath.

For purposes of the no-fault insurance act, MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.,* a motorcycle is not defined as a "motor vehicle". MCL 500.3101(c); MSA 24.13101(2). However, in *Underhill v Safeco Ins Co,* 407 Mich 175; 284 NW2d 463 (1979), the Supreme Court held that a motorcyclist involved in an accident which arises out of the ownership, operation, maintenance, or use of a motor vehicle is entitled to no-fault benefits. 407 Mich 184-186. The Court further held in *Underhill* that a motorcyclist involved in a motor vehicle accident is to look to his own no-fault insurer, if one exists, for benefits. 407 Mich 191-192. Here, defendant is the insurer of plaintiff's automobile or "motor vehicle".[1]

---

[1] After the *Underhill* decision, the Legislature amended MCL 500.3114; MSA 24.13114, by adding, among others, subsection (5) which changed the insurer whom the injured motorcyclist must initially look to for benefits. Under subsection (5), a motorcyclist must first look to the insurer of the owner or registrant of the motor vehicle involved in the accident. The accident in this case occurred prior to *Underhill* and the lower court's judgment was rendered after MCL 500.3114(5); MSA 24.13114(5) became effective. However, we need not resolve whether *Underhill* or the statute determines which insurer is on risk since the motor vehicle alleged to have been involved in the accident was also insured by defendant.

As a general rule, the no-fault insurance act disallows recovery for bodily injury where it is a consequence of an accident with a parked vehicle. MCL 500.3106(1); MSA 24.13106(1). However, one statutory exception to this rule of non-recovery exists if "the vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred". MCL 500.3106(1)(a); MSA 24.13106(1)(a). This is the exception upon which plaintiff relies and upon which the trial court premised its judgment in plaintiff's favor. The court's judgment that Mr. Gaines's vehicle was "parked in such a way as to cause unreasonable risk" of bodily injury was based on two factors: (1) that parking was illegal on the east side of Industrial Avenue after 2 a.m., and (2) that Mr. Gaines was aware of several accidents which had occurred there during the "third shift".[2]

The lower court's opinion did not indicate whether its determination that Mr. Gaines's vehicle "was parked in such a way as to cause unreasonable risk of the bodily injury which occurred" was a legal interpretation of MCL 500.3106(1)(a); MSA 24.13106(1)(a) or a factual resolution of the evidence. However, plaintiff urges us to affirm the decision below because "the trial court finding is not 'clearly erroneous' ". Defendant, on the other hand, treats the question as one of statutory construction. Recently, in *Cassidy v McGovern,* 415 Mich 483; 330 NW2d 22 (1982), the Supreme Court determined that where there is no factual dispute regarding the extent of a plaintiff's injuries, the

---

[2] We note that Mr. Gaines's testimony fails to reveal if there were more accidents involving parked motor vehicles during the hours when it is illegal to park on the east side of Industrial during third shift than the hours when it is legal to park on the east side of Industrial. Mr. Gaines simply stated that he was aware of "many accidents on third shift down there".

court is to decide as a matter of law whether the plaintiff has suffered a "serious impairment of body function" within the meaning of MCL 500.3135; MSA 24.13135. The Court noted several considerations which it believed led to this conclusion: (1) that the phrase "serious impairment of body function" is not a term the intended legislative meaning of which juries would have a clear sense, (2) that the purpose of the no-fault insurance act was to reduce litigation, while leaving the issue of whether the threshold requirement had been met for the trier of fact would usually require a complete trial, and (3) that the Legislature must have intended uniform application of the "serious impairment of body function" threshold, but inevitably this standard would be applied in a nonuniform manner if the question was left for the jury. 415 Mich 501-502. We believe that these same considerations compel the conclusion that whether a motor vehicle "was parked in such a way as to cause unreasonable risk of the bodily injury which occurred" within the meaning of MCL 500.3106(1)(a); MSA 24.13106(1)(a) is an issue of statutory construction for the court.[3]

We now turn to the crucial issue of whether Mr. Gaines's vehicle was "parked in such a way as to cause unreasonable risk of the bodily injury which occurred" within the meaning of MCL 500.3106(1)(a); MSA 24.13106(1)(a). Under Michigan law, violation of an ordinance is evidence of negligence. *Hodgdon v Barr,* 334 Mich 60, 71; 53

[3] In *Cassidy,* the Court recognized that in a case where the facts were in dispute and this dispute straddled the line demarcating those injuries which do and do not constitute a serious impairment of body function, the issue is to be submitted to the jury. Similarly, by analogy to *Cassidy,* if a factual dispute exists which straddles the line of demarcation between whether the vehicle "was parked in such a way as to cause unreasonable risk of the bodily harm which occurred", the issue is to be resolved by the factfinder.

NW2d 844 (1952); *Johnson v Grand Trunk W R Co,*
58 Mich App 708, 713-714; 228 NW2d 795 (1975).
However, before the violation of an ordinance may
be considered as bearing on the question of negli-
gence, the court must determine that the purpose
of the ordinance was to prevent the type of injury
and harm suffered. *Webster v WXYZ,* 59 Mich App
375, 383-384; 229 NW2d 460 (1975), *lv den* 395
Mich 751 (1975). *Cf. Zeni v Anderson,* 397 Mich
117, 138; 243 NW2d 270 (1976) (violation of a
statute). Traffic ordinances which prohibit parking
only after 2 a.m. are, to our knowledge, intended
to assist in the identification of abandoned
stolen, or junk automobiles or to allow for a spe-
cific period during which the streets are cleared of
all vehicles so that they may be cleaned, or both.
We are unaware of any such ordinance which is
intended to protect motorcyclists or other motor-
ists from colliding with parked vehicles. Plaintiff
offered no evidence that the ordinance prohibiting
parking on the east side of Industrial Avenue after
2 a.m. was intended to protect drivers, includ-
ing himself, from collisions with stationary vehi-
cles. Accordingly, Mr. Gaines's mere violation of
the parking ordinance does not bring his vehicle
within the exception embodied in MCL
500.3106(1)(a); MSA 24.13106(1)(a).[4]

Nor do we find Mr. Gaines's knowledge that
several accidents had occurred on the east side of
Industrial Avenue during the "third shift" suffi-
cient to hold that his parked car created an "un-
reasonable risk of * * * bodily injury" within the
meaning of MCL 500.3106(1)(a); MSA

---

[4] This is not to say that a proven violation of a no-parking ordi-
nance may never be compelling evidence that a vehicle was parked in
an unreasonably dangerous manner. For instance, a vehicle parked in
violation of an ordinance prohibiting parking during rush hours on a
busy street may well be found to come within MCL 500.3106(1)(a);
MSA 24.13106(1)(a).

24.13106(1)(a). If Mr. Gaines's subjective knowledge of accidents occurring on Industrial was dispositive, indisputably legally parked vehicles could nonetheless be said to create an unreasonable risk of injury.

In *Miller v Auto-Owners Ins Co*, 411 Mich 633, 639-640; 309 NW2d 544 (1981), the Supreme Court addressed the policy underlying the parking exclusion as follows:

"Injuries involving parked vehicles do not normally involve the vehicle *as a motor vehicle*. Injuries involving parked vehicles typically involve the vehicle in much the same way as any other stationary object (such as a tree, sign post or boulder) would be involved. There is nothing about a parked vehicle *as a motor vehicle* that would bear on the accident.

"The stated exceptions to the parking exclusion clarify and reinforce this construction of the exclusion. Each exception pertains to injuries related to the character of a parked vehicle as a motor vehicle—characteristics which make it unlike other stationary roadside objects that can be involved in vehicle accidents.

"Section 3106(a), which excepts a vehicle parked so as to create an unreasonable risk of injury, concerns the act of parking a car, which can only be done in the course of using the vehicle as a motor vehicle, and recognizes that the act of parking can be done in a fashion which causes an unreasonable risk of injury, as when the vehicle is left in gear or with one end protruding into traffic." (Footnote omitted, emphasis in original.)

See, also, *Heard v State Farm Mutual Automobile Ins Co,* 414 Mich 139, 144-145; 324 NW2d 1 (1982).

In this case, Mr. Gaines's vehicle was parked next to the curb on the east side of Industrial Avenue in a safe and prudent fashion. Nothing about the vehicle made it any different than any other stationary roadside object. We hold as a

matter of statutory construction that plaintiff's
injuries did not arise out of the "ownership, opera-
tion, maintenance or use of a motor vehicle as a
motor vehicle" within the meaning of MCL
500.3105(1); MSA 24.13105(1).

Reversed. No costs, a significant public question
involving the proper construction of a provision of
the no-fault insurance act being involved.

R. B. BURNS, J., concurred.

M. J. KELLY, P.J. *(dissenting)*. I must dissent in
this case for several reasons.

Plaintiff seeks to recover personal injury protec-
tion benefits for injuries incurred when his motor-
cycle collided with a parked automobile owned by
Irish Gaines. Plaintiff relies upon the exclusion to
the "parked car" exception to the no-fault act,
MCL 500.3106(1)(a); MSA 24.13106(1)(a), which al-
lows recovery for injuries arising out of a collision
with a motor vehicle "parked in such a way as to
cause unreasonable risk of the bodily injury which
occurred". On briefs and depositions, the trial
court found that Gaines had parked his automo-
bile in a manner that caused unreasonable risk of
harm to others and allowed recovery for plaintiff.

The majority finds that the question of whether
Gaines's motor vehicle was parked so as to cause
an unreasonable risk of harm to others constitutes
a question of law since the parties do not dispute
any of the underlying facts. In support of their
position, the majority cites *Cassidy v McGovern,*
415 Mich 483; 330 NW2d 22 (1982), in which the
Supreme Court held that where there is no factual
dispute over the extent of injuries suffered, the
question of whether a person has suffered "serious
impairment of body function" is a question of
statutory construction and is therefore a question

of law. I believe that the majority's analogy between the serious impairment question and the parked car question constitutes a significant expansion of the rule announced in *Cassidy.* I also believe that the analogy is premature and unnecessary in this case.

The parties did not argue at trial and the court did not address whether the *Cassidy* rule applied to the parked car question. More importantly, neither party has raised or briefed this issue on appeal. I am thus reluctant to join in the majority's extension of the *Cassidy* rationale. I merely note at this time one important distinction that I see between the serious impairment question and the parked car question. Unlike the term "serious impairment of body function", the term "parked in an unreasonable manner" is one that I would expect juries to clearly understand. In negligence actions, for example, reasonableness as a standard of care has always been reserved for the trier of fact. See *Moning v Alfono,* 400 Mich 425, 434; 254 NW2d 759 (1977); *Zeni v Anderson,* 397 Mich 117, 140; 243 NW2d 270 (1976); *Samson v Saginaw Professional Building, Inc,* 393 Mich 393, 407; 224 NW2d 843 (1975).

In any event, I do not believe that the *Cassidy* issue need be reached in this case. My own review of the record in this case leads me to conclude that the trial court justifiably treated the issue of whether Gaines's automobile was parked in an unreasonable manner as a question of fact. Since the trial court and not a jury sat as the trier of fact in this case, I would apply the clearly erroneous standard to the court's findings. *Tuttle v State Highway Dep't,* 397 Mich 44; 243 NW2d 244 (1976); *Kurczewski v State Highway Comm,* 112 Mich App 544, 552; 316 NW2d 484 (1982) *lv den* 414 Mich 957 (1982); GCR 1963, 517.1.

There is evidence in the record to show that Gaines parked his automobile in the far left lane of a four-lane highway. During the day, the two outside lanes were reserved for parking. During late night hours, however, the two outside lanes were not reserved for parking and were therefore open for traffic. I believe that an automobile parked after dark in a lane opened for traffic could be perceived as parked in such a way as to cause unreasonable risk of injury to others. Indeed, the majority itself suggests in footnote 4 of their opinion that a vehicle parked in a nonparking lane during rush hour traffic on a busy street may come under the exclusion to the parked car exception in the no-fault act. I find little distinction between the majority's hypothetical and the facts of this case. I also note that plaintiff's inability to recall the circumstances preceding the accident is attributable to the brain damage he suffered from the accident, resulting in his loss of memory.

While I agree that the trial court's findings could have been more clearly stated, I nevertheless find that the evidence in this case supports the court's finding that Gaines's car was parked so as to cause unreasonable risk of harm to plaintiff.

I would affirm.