*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN STUTH,

UNPUBLISHED
October 6, 2022

          Plaintiff/Counterdefendant-Appellee,

v

No. 357244
Washtenaw Circuit Court
LC No. 19-000710-NF

HOME-OWNERS INSURANCE COMPANY,

          Defendant/Counterplaintiff-Appellant.

Before: M. J. KELLY, P.J., and CAMERON and HOOD, JJ.

PER CURIAM.

In this appeal arising under Michigan's no-fault act, MCL 500.3101 *et seq.*, defendant/counterplaintiff, Home-Owners Insurance Company ("Home-Owners"), appeals as of right the order denying its counterclaim for declaratory relief. We affirm in part and reverse in part.

## I. BACKGROUND

This case arises from a July 19, 2018 motorcycle accident involving plaintiff/counterdefendant, John Stuth. Stuth was injured after his motorcycle veered off the road and Stuth was thrown over the handlebars. Home-Owners insured Stuth's motorcycle. After the accident, Stuth filed a claim for personal injury protection (PIP) benefits. Home-Owners denied the claim because the accident did not involve a "motor vehicle."

Stuth sued Home-Owners alleging breach of contract and breach of statutory duty. Home-Owners filed a counterclaim for declaratory relief, asking the trial court to order Stuth was not entitled to PIP benefits because the accident did not involve a motor vehicle. Stuth responded, arguing the accident involved a motor vehicle because, just before the accident, Stuth observed a white van in the opposing lane of traffic. Stuth explained that he veered his motorcycle off the road because he thought the van was going to enter his lane and collide with the motorcycle. After a bench trial, the trial court denied Home-Owners's counterclaim, finding a van was present at the scene and that the van caused Stuth's injuries. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision in a declaratory action. *Flanders Indus, Inc v State of Michigan*, 203 Mich App 15, 20; 512 NW2d 328 (1993). The trial court's factual findings are reviewed for clear error. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 405; 952 NW2d 586 (2020). "[A] finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. "This Court reviews de novo a trial court's resolution of issues of law, including the interpretation of statutes and court rules." *State Treasurer v Bences*, 318 Mich App 146, 149; 896 NW2d 93 (2016) (citation and quotation marks omitted).

> The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. The first criterion in determining legislative intent is the specific language of the statute. If the plain and ordinary meaning of the language is clear, judicial construction is neither necessary nor permitted, unless a literal construction of the statute would produce unreasonable and unjust results inconsistent with the purpose of the statute. When interpreting a statute, courts should avoid any construction that would render a statute, or any part of it, surplusage or nugatory. [*Hamilton v AAA Michigan*, 248 Mich App 535, 541; 639 NW2d 837 (2001) (citations omitted).]

## III. ANALYSIS

Home-Owners argues the trial court erred in finding the presence of a white van. Alternatively, Home-Owners contends that Stuth was not entitled to PIP benefits because the van did not cause Stuth's injuries. While we disagree with Home-Owners that the trial court erred in finding the presence of the van, we agree there was not a sufficient causal connection between the van's actions and Stuth's injuries.

### A. PRESENCE OF THE WHITE VAN

MCL 500.3105 governs liability for PIP benefits under the no-fault act. *Jones v Tronex Chem Corp*, 129 Mich App 188, 191; 341 NW2d 469 (1983). Individuals may recover PIP benefits for injuries "arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." MCL 500.3105(1). "Motorcycles are excluded from the definition of motor vehicles under the no-fault act." *Sanford v Ins Co of North America*, 151 Mich App 747, 749; 391 NW2d 473 (1986); MCL 500.3105. Even so, "a motorcyclist is not among those whom the Legislature has excluded from benefits." *Underhill v Safeco Ins Co*, 407 Mich 175, 185; 284 NW2d 463 (1979), superseded by statute on other grounds as recognized by *Autry v Allstate Ins Co*, 130 Mich App 585, 590 n 1; 344 NW2d 588 (1983). Indeed, "a motorcyclist involved in an accident which arises out of the ownership, operation, maintenance or use of a motor vehicle is entitled to no-fault benefits." *Autry*, 130 Mich App at 590.

In its counterclaim, Home-Owners asked the trial court to find that there was insufficient evidence demonstrating the presence of a motor vehicle, specifically a white van. The trial court denied this request, finding there was sufficient evidence of a van. On appeal, Home-Owners argues the trial court clearly erred in finding the presence of the van because this finding conflicts

with other, contradictory evidence. In support of this assertion, Home-Owners points to Stuth's failure to tell medical and insurance personnel anything about the presence of the van.

During the bench trial on Home-Owners's counterclaim, Home-Owners presented testimony from several witnesses who spoke to Stuth about how the accident occurred and did not recall Stuth even mentioning a motor vehicle. Even so, Stuth presented testimony of other witnesses, including his own, attesting the presence of the van. Although Home-Owners opines that it is "implausible" Stuth would omit reporting the van, this Court "must afford deference to the trial court's superior ability to judge the credibility of the witnesses who appear before it," *Patel v Patel*, 324 Mich App 631, 633; 922 NW2d 647 (2018), and this Court may only reverse a trial court's factual findings on the basis of clear error. *Pioneer State Mut Ins Co*, 331 Mich App at 405. We conclude that Home-Owners has failed to show that the trial court clearly erred when it found that a van was present just before the accident occurred.

Further bolstering our conclusion were the testimonies of Home-Owners's witnesses who noted their difficulty remembering how Stuth described the accident. For instance, one witness acknowledged that he only had a "vague" recollection of the accident. Two others agreed they did not "have an independent recollection" of the accident. And a fourth witness said he only had a "vague" memory of speaking to Stuth, but he did not "recall word for word outside of what [his] claim notes indicate." These testimonies contrasted with two other witnesses, who readily recalled Stuth's report of the van.

Conflicting evidence regarding the presence of a motor vehicle does not give rise to a conclusion the trial court clearly erred in finding the presence of a motor vehicle. Indeed, reversal on this basis requires a "definite and firm" conviction of a mistake. Because there was evidence attesting Stuth's version of events, there is no clear error warranting reversal. Therefore, we affirm the trial court's finding that a van was present at the scene of the accident.

B. CAUSAL CONNECTION

Next, we consider whether there was a sufficient causal connection between the white van's actions and Stuth's injuries. There is no "iron-clad" rule qualifying the level of involvement of a motor vehicle under the no-fault act, *Dep't of Social Servs v Auto Club Ins Ass'n*, 173 Mich App 552, 557; 434 NW2d 419 (1988), and each case should be evaluated on a case-by-case basis. *Detroit Med Ctr v Progressive Mich Ins Co*, 302 Mich App 392, 396-397; 838 NW2d 910 (2013). "The primary consideration" in analyzing whether a motor vehicle was involved in an accident "must be the relationship between the injury and the vehicular use of a motor vehicle." *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 32; 528 NW2d 681 (1995). This relationship "must be more than incidental, fortuitous, or 'but for,' and the vehicle's connection with the injury should be directly related to its character as a motor vehicle." *Id*. (quotation marks omitted).

But, there does not need to be actual physical contact between the motor vehicle and the motorcycle so long as "the causal nexus between the accident and the car is established." *Detroit Med Ctr*, 302 Mich App at 396, quoting *Bromley v Citizens Ins Co of America*, 113 Mich App 131, 135; 317 NW2d 318 (1982). The motor vehicle "must actively, as opposed to passively, contribute to the accident." *Turner*, 448 Mich at 39. And, there cannot been a "random association" between the motor vehicle and the accident. *Id*. at 35. "There must be some activity, with respect to the

vehicle, which somehow contributes to the happening of the accident." *Detroit Med Ctr*, 302 Mich App at 396, quoting *Brasher v Auto Club Ins Ass'n*, 152 Mich App 544, 546; 393 NW2d 881 (1986). Put differently, "there must be some activity by the motor vehicle that contributes to the happening of the accident beyond its mere presence." *Detroit Med Ctr*, 302 Mich App at 398-399. A motor vehicle is not "involved in the accident merely because of the motorcyclist's subjective, erroneous perceived need to react to the motor vehicle." *Id*. at 398. Instead, a motor vehicle is involved in an accident when its actions created an "actual, objective need for the motorcyclist to take evasive action." *Id*. at 399.

Stuth testified about the van's actions in the following exchange:

> *Q*. [W]hen you think back now about how this accident occurred do you acknowledge that what took place was that you believe the driver of the white van made a brief move in the direction of the double yellow line but did not cross it, is that correct?
>
> *A*. He did not . . . fully cross the yellow line.
>
> *Q*. Did he fully cross the first yellow line?
>
> *A*. Yes, I believe so.
>
> *Q*. And did he contact the second yellow line or are you not sure about that?
>
> *A*. It would be real close. Well and I don't know specifically, no I don't know.

> \* \* \*

> *Q*. And then the driver of the van as you've described it immediately corrected and made the white van back away from the yellow line, is that right?
>
> *A*. Yes.
>
> *Q*. All right. So if you had continued on the same path that you were traveling there would have been no accident, is that right?
>
> *A*. Yep.

As Stuth's testimony demonstrates, the van never crossed the second yellow line and no part of the van entered Stuth's lane.[1] And importantly, Stuth explained that had he continued on the same path he was traveling, there would have been no need for him to take evasive action to

---

[1] This conflicts with Stuth's arguments in this appeal stating affirmatively the van "crossed the centerline into [Stuth's] lane." However, arguments are not evidence and this Court is obliged to rely on the evidence, rather than the parties' interpretation of the evidence. See, e.g., *Guerrero v Smith*, 280 Mich App 647, 658; 761 NW2d 723 (2008).

avoid a collision.  In other words, Stuth admitted that he misjudged the situation and lost control of his motorcycle as a result.  Therefore, Stuth's decision to veer his motorcycle off the road was based on his incorrect, subjective belief that he needed to take evasive action to avoid a collision. Accordingly, we conclude that Stuth is not entitled to PIP benefits because the white van did not create an actual, objective need for the motorcyclist to avoid the van.

Yet the trial court rejected Home-Owners's motion for declaratory relief, reasoning in part:

> I . . . could absolutely see the way, as [Stuth is] coming in that curve and if that big van is coming right towards him and it's looking like it's coming across the yellow lines, [Stuth] . . . described it as flinching.  That's absolutely what happens.  He's trying to get off the road to recover and frankly that's when everything breaks up on him.
>
> That . . . makes sense he wouldn't stop to see if it's coming all the way over the yellow line.  That look [sic] like it's coming right at him, he's going to get off to the side.  He is not going to pay attention to that.

While Stuth's leaving the roadway was based on what he mistakenly *thought* the van was going to do, the trial court erred when it focused its analysis on the reasonableness of Stuth's actions. Again, whether a motorcyclist is entitled to PIP benefits is an objective test that focuses on the nexus between the motor vehicle's actions and the accident.  The causal nexus was not present in this case because there was not any "actual, objective" need to take evasive action that would have entitled Stuth to PIP benefits.

The dissent correctly notes that to establish a causal connection, there must be an actual need to take evasive action at the time of the crash.  However, the dissent goes on to opine that in the "split second" from when Stuth observed the van cross over the first yellow line to when the motorcycle left the roadway, there was an *actual* need to take evasive action.  We read the dissent's logic as essentially applying a "but-for" test to this case.  That is, but for the van's act of crossing the first yellow line, Stuth's motorcycle would not have left the roadway.

However, as noted, to establish a causal connection between the use of a motor vehicle and a motorcyclist's injuries requires *more than* but-for causation.  *Turner*, 448 Mich at 32.  For example, one could envision a scenario where a motorcyclist is traveling very close to the centerline when an oncoming motor vehicle crosses the first yellow line.  In that instance, there is an actual, objective need for the motorcyclist to take evasive action.  On the other hand, what if the motorcyclist is on the far right side of their lane when the motor vehicle briefly crosses the first yellow line?  By the dissent's logic, a motor vehicle is involved in both scenarios for purposes of the no-fault act.  Yet, under the second scenario, there is no need to take evasive action because the motor vehicle and the motorcycle are not in danger of colliding.  This case aligns with the second scenario because Stuth admitted that there would have been no collision had he stayed on his path.  In other words, this case involves nothing more than but-for causation.

Like the trial court, the dissent minimizes Stuth's admission that, reflecting back on the situation, he did not need to take any evasive action to avoid a collision.  In doing so, the dissent refers to Stuth's testimony is as little more than his "after the fact speculation" of action that "Stuth

may or may not have needed to take." But Stuth's testimony is critically important in this case. He was the only witness who saw the van and described its operation. And his testimony that there would not have been a collision had he remained in his lane was neither speculative nor ambiguous. Therefore, his testimony should be properly considered as unrebutted opinion evidence. MRE 701.

Affirmed in part, and reversed in part. We remand this case to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Thomas C. Cameron
/s/ Noah P. Hood