WILLS v STATE FARM INSURANCE COMPANIES

Docket No. 85807. Argued October 3, 1990 (Calendar No. 6). Decided
April 30, 1991.

Kristy Wills brought an action in the Tuscola Circuit Court
against State Farm Insurance Company, her husband's no-fault
insurer, seeking survivor's benefits after her husband was
killed in an accident along the shoulder of a highway, involving
a snowmobile on which he was a passenger and an unoccupied
automobile. The court, Patrick R. Joslyn, J., granted summary
disposition for the defendant, holding that no facts were offered
to support the conclusion that the vehicle was unreasonably
parked. The Court of Appeals, SAWYER, P.J., and BEASLEY and
A. L. GILBERT, JJ., affirmed in an opinion per curiam, finding
that even if the automobile had been unreasonably parked, it
was not in use as a motor vehicle at the time of the accident
(Docket No. 105018). The plaintiff appeals.

In an opinion by Chief Justice CAVANAGH, joined by Justice
BOYLE, an opinion by Justice RILEY, and an opinion by Justice
GRIFFIN, the Supreme Court held:

Where the facts are undisputed, the determination whether
an automobile is parked in such a way as to create an unrea-
sonable risk of bodily injury within the meaning of MCL
500.3106(1)(a); MSA 24.13106(1)(a) is an issue of statutory con-
struction for the court.

1. Under § 3105(1) of the no-fault act, no-fault benefits, in-
cluding survivors' benefits, may be had for accidental bodily
injury arising out of the ownership, operation, maintenance, or
use of a motor vehicle as a motor vehicle. Under § 3106, a
parked automobile is not in use as a motor vehicle unless an
enumerated exception, such as being parked in a way to cause
unreasonable risk of the bodily injury which occurred, applies.
Mere demonstration of a statutory violation is insufficient to
satisfy the unreasonable risk exception.

2. In this case, the vehicle was not in use as a motor vehicle

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic §§ 271 et seq.
See the Index to Annotations under No-Fault; Parked or Parking
Vehicle.

for purposes of § 3105(1) because it was parked and none of the exceptions enumerated in § 3106(1) applied. In addition, the decedent was not within the class of persons sought to be protected. The lighted-vehicle statute was intended to protect the safety of other vehicles traveling on a roadway. A passenger on a snowmobile, traveling unlawfully on the shoulder of a highway, is not a member of the class of persons intended to be protected. It is not unreasonable to park a vehicle on the shoulder of a highway without regard to the protection of persons who legally may not be on the shoulder.

Chief Justice CAVANAGH, joined by Justice BOYLE, further stated that "unreasonable risk" focuses not on the act of parking a car, but on the nature of the risk of the car as parked to unknown third parties. The standard must be objective and external, the same for all persons. Although some risk is unavoidable where a car is parked adjacent a roadway, it is the same risk that inheres to any adjacent stationary object. It is for the court to examine parking statutes and determine whether an alleged violation endangers a class of persons intended to be protected.

Justice RILEY, concurring, stated that the question whether there has been a serious impairment of bodily function, like the question whether a parked vehicle created an unreasonable risk, is one of law, not of fact.

Justice GRIFFIN, concurring, agreed with the result and reasoning of the opinion of Chief Justice CAVANAGH, except part II(A).

Affirmed.

Justice BRICKLEY, joined by Justice LEVIN, dissenting, stated that the parking statute was violated and the plaintiff snowmobiler was within the class of persons to be protected by that statute. The grant of summary disposition should be reversed and the case remanded for a determination whether the driver parked his automobile in a manner that created an unreasonable risk in view of the inference that the violation of the statute suggests.

The lighted-vehicle statute requires certain lights to be displayed on a vehicle and visible when it is parked upon a highway. The requirement should apply to a motor vehicle parked on any portion of the right of way adapted, maintained, or intended for use of vehicular traffic. The shoulder of a highway was intended to accommodate vehicular travel, even if only for a brief amount of time. Because the automobile in this case was parked on the shoulder of the highway without its lights on, it was parked in violation of the lighted-vehicle

statute. Because the statutory definition of "highway" does not preclude a shoulder from being considered a part of a highway, traffic on the shoulder may be considered as being within the class intended to be protected. The conduct of the snowmobiler should be considered only to the extent that it made the collision unlikely or unforeseeable.

It is a matter of judicial discretion whether violation of a statute is relevant to the issues involved in a particular case and whether an inference of negligence is available to either party. A claim for recovery of damages, pursuant to § 3106(1)(a) of the no-fault act and based upon violation of a parking statute, would require the statutory-purpose doctrine to be applied initially to determine whether the parking statute was intended to address the situation presented. In this case, summary disposition was not appropriate because the plaintiff was within the class of persons intended to be protected by the lighted-vehicle statute.

Justice Mallett took no part in the decision of this case.

178 Mich App 263; 443 NW2d 396 (1989) affirmed.

Insurance — No-Fault — Parked Vehicles.
Where the facts are undisputed, the determination whether an automobile is parked in such a way as to create an unreasonable risk of bodily injury within the meaning of MCL 500.3106(1)(a); MSA 24.13106(1)(a) is an issue of statutory construction for the court.

*Law Office of W. J. Drillock* (by *Richard A. Rinn*) for the plaintiff.

*Gault, Davison, Bowers, Hill, Parker & McAra* (by *Edward B. Davison*) for the defendant.

Amici Curiae:

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James L. Borin* and *James G. Gross*); (*Robert D. Goldstein,* of counsel), for Auto Club Insurance Association.

Cavanagh, C.J. We granted leave to appeal in this case to examine the parking exception contained in § 3106(1)(a) of the no-fault liability stat-

ute.[1] This exception allows recovery of benefits from an accident involving a parked vehicle, but only if the vehicle was parked in an unreasonably dangerous manner. We hold that where the facts are undisputed, the determination of whether an automobile is parked in such a way as to create an unreasonable risk of bodily injury within the meaning of § 3106(1)(a) is an issue of statutory construction for the court. Summary disposition in favor of the defendant insurance company is affirmed.

I

On January 26, 1985, at approximately 10:00 P.M., a snowmobile traveling north along the shoulder of highway M-19 struck an unoccupied automobile. The automobile was facing oncoming traffic with its lights off. The plaintiff's husband, a passenger on the snowmobile, was killed. The snowmobile was unlawfully traveling along the shoulder of the highway. The plaintiff sought survivor's benefits through State Farm Insurance Company, her husband's no-fault insurer.

State Farm denied benefits, and the plaintiff sought recovery in circuit court. The court granted summary disposition in favor of the insurance company, holding that the plaintiff offered no facts to support the conclusion that the vehicle was unreasonably parked. The Court of Appeals affirmed on the ground that even if the car had been unreasonably parked, it was not in use as a motor vehicle and summary disposition, therefore, was proper.[2] We granted leave to appeal.[3]

The issue before this Court is whether it can be

---

[1] MCL 500.3101 et seq.; MSA 24.13101 et seq.

[2] 178 Mich App 263, 267; 443 NW2d 396 (1989).

[3] 434 Mich 900 (1990).

determined, as a matter of law, whether an automobile parked on the shoulder of a highway is unreasonably parked under § 3106(1)(a).

II

No-fault benefits, including survivors' benefits, are available for "accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." MCL 500.3105(1); MSA 24.13105(1). Since snowmobiles are not motor vehicles for purposes of the no-fault statute,[4] it must be determined whether the parked vehicle was in use as a motor vehicle.

Under § 3106 of the no-fault act, parked vehicles are declared not to be in use as motor vehicles unless one of the stated exceptions is satisfied. In this case, the plaintiff is relying on § 3106(1)(a) which allows recovery when the vehicle "was parked in such a way as to cause unreasonable risk of the bodily injury which occurred."

A

In its decision, the Court of Appeals cited *Autry v Allstate Ins Co,* 130 Mich App 585; 344 NW2d 588 (1983), which has been cast into some doubt because of this Court's ruling in *DiFranco v Pickard,* 427 Mich 32; 398 NW2d 896 (1986). The *DiFranco* reasoning does not operate to create a question of fact in this case because the statutory

---

[4] For purposes of the no-fault act, "motor vehicle" is defined as "a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels." MCL 500.3101(2)(e); MSA 24.13101(2)(e). Snowmobiles are not primarily designed for operation upon public highways and do not have wheels. See *McDaniel v Allstate Ins Co,* 145 Mich App 603; 378 NW2d 488 (1985), and *Schuster v Allstate Ins Co,* 146 Mich App 578; 381 NW2d 773 (1985).

provisions involved are distinguishable on several grounds.

In *DiFranco* we overturned prior case law by declaring that the "question whether the plaintiff suffered a serious impairment of body function must be submitted to the trier of fact whenever the evidence . . . is such that reasonable minds could differ as to the answer." *Id.* at 69. This rule is in opposition to the customary rule requiring the jury to decide the facts and the judge to construe the law by interpreting statutory language. While there were compelling reasons for departing from that rule in *DiFranco,* there are no such reasons for abandoning it when construing the parking exclusion.

One of the underlying policy considerations behind the no-fault insurance legislation was to reduce the number of cases seeking damages for economic loss.[5] The serious impairment clause is a threshold requirement which must be satisfied before the plaintiff can recover for *noneconomic* loss such as pain and suffering; what the plaintiff seeks here is *economic* loss, specifically survivor's benefits. The policy of keeping down the number of lawsuits applies to the plaintiff's effort to recover economic loss and favors a determination as a matter of law.

Furthermore, the Court in *DiFranco* opined that the phrase "serious impairment of body function" was not definable and that the Court of Appeals decisions had not been successful in clarifying the definition. *Id.* at 50. In contrast, the question whether a parked vehicle creates an "unreason-

---

[5]   [N]o-fault acts were designed primarily to reduce the number of cases seeking damages for *economic* loss, e.g., wage loss, survivor's loss, and medical expenses. [*DiFranco* at 55. Emphasis in original.]

able risk" is the type of question that confronts trial courts routinely, and there is no disparity among the Court of Appeals panels in their interpretation of § 3106. Each panel addressing the issue has appropriately held that a vehicle, parked in a prudent fashion and out of the flow of traffic, does not create an unreasonable risk of injury under § 3106.[6] We are persuaded that it promotes judicial economy and uniformity to determine this issue as a matter of statutory construction.

The phrase "serious impairment of a body function" refers to a particular injury, suffered by a particular plaintiff. Accordingly, it lends itself to individualized interpretation by a jury. In contrast, the phrase "unreasonable risk" examines not the action of the actor in parking the car, but the nature of the risk to unknown third parties, who are thereby put at risk. The standard must be objective and external, and it should be the same for all persons. It is inappropriate to allow that standard to fluctuate with the vagaries of different jury panels. The phrase need not be individualized, and we accept the parking statutes and regulations to quantify the degree of risk to be deemed "reasonable."[7] This is an area of the law where a uniform standard should be applied.

Finally in this regard, we note that unlike the "serious impairment" standard, the Legislature

---

[6] *Hackley v State Farm Mutual Automobile Ins Co,* 147 Mich App 115; 383 NW2d 108 (1985) (unreasonable risk, blocking traffic flow); *Williams v Allstate Ins Co,* 144 Mich App 178; 375 NW2d 8 (1985) (unreasonable risk, protruding onto traveled portion of roadway); *Autry v Allstate Ins Co, supra* (no unreasonable risk, in violation of statute but safely and prudently parked).

[7] The issue of negligence may be removed from jury consideration if the court concludes that overriding considerations of public policy require that a particular view [on this issue] be adopted and applied in all cases. [*Moning v Alfono,* 400 Mich 425, 450; 254 NW2d 759 (1977).]

has provided some guidance to the courts through its parking regulations. Since there are no statutory guidelines for the definition of "serious impairment," *DiFranco* qualified its result by stating: "Without further guidance from the Legislature, we believe that juries are better suited to resolving threshold questions where reasonable minds can differ on the answer." *Id.* at 57. Because there is statutory guidance relating to proper parking techniques, the court is well suited to resolving this threshold question when the facts are not in dispute.

Thus, when the facts are not disputed it becomes the function of the court, as a matter of law, to determine whether any of the statutory exceptions are satisfied. Whenever a vehicle is parked, it necessarily creates a degree of risk of collision with vehicles moving in proximity. That risk, however, is the same risk that inheres to any stationary object adjacent to the roadway. Recognizing that some risk is unavoidable, and respectful of the goal of the no-fault act to provide compensation for vehicular accidents, the court must examine the parking statutes and determine whether an alleged violation endangers a class of persons intended to be protected by the statutes.

B

To establish the unreasonableness of the parking in this case, the plaintiff has alleged a violation of the lighted-vehicle statute which requires vehicles parked on a highway to display their lights.[8] Although there is some question regarding whether the vehicle did in fact violate the statute,[9] the

_____

[8] MCL 257.694; MSA 9.2394.

[9] There is a dispute with respect to whether an automobile parked on the shoulder is located "upon a highway" for purposes of the

Court of Appeals was nevertheless correct in up-
holding the summary disposition.

On the basis of these facts, even if the Court
were to hold that the automobile was parked in
violation of a statute, the plaintiff could not pre-
vail because the plaintiff's decedent was not in the
class of plaintiffs sought to be protected by the
lighted-vehicle statute. In view of the purpose
behind the lighted-vehicle statute, the plaintiff's
claim of unreasonable risk by virtue of a statutory
violation must fail.

Use of the phrase "unreasonable risk" in the
parking exception appears, at first blush, to create
a question of fact.[10] But where the facts are undis-
puted and the complainant is relying on a viola-
tion of a statute to establish that unreasonable-
ness, it is a question of law for the court. The
definition of proper parking techniques is provided
by parking statutes and local parking ordinances.
The court, as a matter of law, then applies those
statutes and ordinances.

In applying the parking regulations, the court
must establish that the statutory purpose doctrine
is satisfied.[11] The court can then determine
whether the statute was intended to protect the

lighted-vehicle statute, see *Wills v State Farm Ins Cos,* n 2, *supra* at
266, n 7.

Although this legal dispute was not resolved below, in light of our
determination that the statutory purpose doctrine bars this action, it
is unnecessary to resolve the dispute here.

[10] While we recognize that "unreasonableness" in the general,
negligence sense is a question for the jury, the statutory concept here,
assuming undisputed facts, is a question of law in the first instance.

[11] In *Zeni v Anderson,* 397 Mich 117, 138; 243 NW2d 270 (1976), the
Court stated: "By its interpretation of the statutory purpose a court
may in effect excuse an individual from the consequences of violating
a statute. For example, the court may find the statute's purpose was
not to protect the person allegedly injured, or, even if it was, that
[protection against] the harm suffered was not what the Legislature
designed the statute to do."

Because this doctrine applies to the determination at issue here, it
would not be enough to merely examine whether the vehicle was

person injured and to prevent the harm suffered. The statutory purpose doctrine remains unfulfilled on these facts. The lighted-vehicle statute was designed to protect the safety of other vehicles traveling on a roadway. This Court examined an earlier version of the lighted-vehicle statute in *Ballinger v Smith,* 328 Mich 23; 43 NW2d 49 (1950), and concluded that it was "intended to protect traffic on the highway." *Id.* at 31. A passenger on a snowmobile, traveling unlawfully[12] on the shoulder of a highway, is not in the class of persons intended to be protected by the lighted-vehicle statute.

We are persuaded that, by its use of the term "unreasonable," the Legislature has allowed for this inquiry into the statutory purpose. The parking exception in the no-fault statute does not say "unlawfully parked" and, therefore, mere demonstration of a statute violation is not enough to satisfy the parking exception. There may be situations where an automobile is illegally parked, as, for example, in a handicapped parking space, but this status as an illegally parked vehicle would not be sufficient to determine that the vehicle was "unreasonably parked" for purposes of no-fault liability.

Finally, to establish the unreasonableness of the parking in this case, the plaintiff points to the inability of the snowmobile driver to see reflector-type taillights because the automobile was parked facing oncoming traffic. We conclude that it is not unreasonable to park a vehicle without regard to the protection of persons who may not legally be

___

parked in conformity with all parking statutes and ordinances. There must also be evidence that the statute was intended to prevent the type of harm which occurred and was intended to protect this class of claimant.

[12] The counsel for plaintiff conceded in oral argument before this Court that the snowmobile was traveling unlawfully on the shoulder.

on the shoulder where the vehicle is parked. The trial court in this case correctly determined that the vehicle was not unreasonably parked. It was completely off the roadway, it was not impeding traffic flow, and it was plainly visible.[13] The trial court correctly dismissed the plaintiff's action.

### III

We conclude that where the facts are not in dispute, the court is to determine whether a parked automobile satisfies one of the parking exceptions to allow for the recovery of no-fault, first-party benefits for personal injury resulting from the involvement of that parked automobile.

Although we employ different reasoning from that of the Court of Appeals, we reach the same conclusion. The vehicle was not in use as a motor vehicle for purposes of § 3105(1) because it was a parked automobile and none of the exceptions of § 3106(1) applied. Accordingly, the grant of summary disposition in favor of the defendant insurance company is affirmed.

BOYLE, J., concurred with CAVANAGH, C.J.

RILEY, J. I concur in Chief Justice CAVANAGH's opinion.

However, I write separately to indicate my disagreement with the lead opinion's attempt to distinguish this case from *DiFranco v Pickard*, 427 Mich 32; 398 NW2d 896 (1986). While finding that "unreasonable risk" (the language of the no-fault act which concerns this case) presents a question

---

[13] A police officer testified: "[T]he vehicle being on the shoulder as it was, we felt it was not, in fact, a hazard to any driver driving up and down M-19. They would have clearly seen it; and, it would not have been in their way, to impede traffic . . . so there was no citation issued."

of law, Chief Justice CAVANAGH reaffirms the majority opinion in *DiFranco* that "serious impairment of a bodily function" is a question of fact. This holding was challenged by former Chief Justice WILLIAMS in part I of his *DiFranco* opinion, a view to which I subscribed and continue to hold. *Id.* at 93.

GRIFFIN, J. I concur in the result and, except as to part II(A), the reasoning of the opinion of Chief Justice CAVANAGH.

BRICKLEY, J. (*dissenting*). I agree with the lead opinion that the issue is whether the instant automobile, parked on the shoulder of the highway at the time it was struck by the snowmobile, "was parked in such a way as to cause unreasonable risk of the bodily injury which occurred." MCL 500.3106(1)(a); MSA 24.13106(1)(a).

My disagreement is with the analysis that enables the lead opinion to conclude that plaintiff is not included among those persons intended to be protected by the parking statute that was allegedly violated by the automobile being parked on the shoulder of the road, without its lights on, where it was struck by the snowmobile.[1]

I also take exception to the lead opinion's willingness to decide the question whether "unreasonable risk" is to be decided as a question of law, rather than as a factual determination, when that issue was not presented by either of the parties to this lawsuit or given any substantive analysis by the lower courts.[2]

---

[1] It should be noted the Court of Appeals did not determine whether plaintiff was within the class of persons intended to be protected by the parking statute, and the trial court had merely concluded it was not convinced "the ordinance in question was to prevent the type of injury suffered herein."

[2] The Court of Appeals stated within its opinion that the determina-

I conclude that the parking statute was violated and that the plaintiff snowmobiler was within the class of persons intended to be protected by that statute. I would reverse the summary judgment and remand for a determination whether the driver parked his automobile in a manner that created an unreasonable risk in view of the inference that the violation of such statute suggests.[3]

I

Although sounding in tort, the phrase "unreasonable risk" adopted by the Legislature in § 3106(1)(a) is not utilized to determine whether a particular insured was at fault for an accident involving a parked motor vehicle. Rather, it is set forth as one of the standards for determining when a parked motor vehicle should be considered as being in use "as a motor vehicle." The definition of "unreasonable risk" is not defined within the no-fault act itself, or within any other legislation of which I am aware. Accordingly, I think it is helpful to look to the tort analogy where these words have a familiar meaning.

Reasonableness is one of the most significant elements of the tort of negligence. As we stated in *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977):

---

tion whether an automobile " 'was parked in such a way as to cause unreasonable risk 'of the bodily injury which occurred' " is an issue of statutory construction for the court to resolve, when the facts are undisputed. 178 Mich App 263, 266; 443 NW2d 396 (1980). However, this determination was based upon a previous Court of Appeals decision in *Autry v Allstate Ins Co,* 130 Mich App 585; 344 NW2d 588 (1983), which has been called into question after our decision in *DiFranco v Pickard,* 427 Mich 32; 398 NW2d 896 (1986). This issue was not addressed by the trial court.

[3] I would permit the parties to raise arguments concerning the propriety of summary judgment which had not been previously presented.

> Negligence is conduct involving an *unreasonable
> risk* of harm. [*Id.* at 433. Emphasis in original. See
> also *Cavaliere v Adults for Kids,* 149 Mich App
> 756; 386 NW2d 667 (1986).]

Therefore, it would appear that conduct intended
to be covered by the term "unreasonable risk" is
very much akin to, if not identical with the negli-
gence standard, and, accordingly, that standard
should be controlling in our interpretation of the
clause at issue.

A

In negligence jurisprudence, the violation of a
statute creates an inference of negligence which
the factfinder is entitled to consider in rendering
its decision. See *Klanseck v Anderson Sales,* 426
Mich 78; 393 NW2d 356 (1986). Because of the
similarity between the standard of negligence and
the phrase "unreasonable risk," it would seem
that an identical inference from the violation of a
parking statute should be permitted to establish
the "unreasonable risk" standard within § 3106(1)(a).

A corollary of the statutory violation inference
is the statutory purpose doctrine which insures
that the statutory violation has a causal relation-
ship to the injury. See *Zeni v Anderson,* 397 Mich
117; 243 NW2d 270 (1976). In a negligence action
the jury instruction permitting an inference of
negligence from violation of a statute, SJI2d 12.01,
can be given to the jury only if the statutory
purpose requirements are satisfied.

> This instruction [SJI2d 12.01] should be given
> only if defendant or plaintiff has alleged a statu-
> tory violation as a ground for negligence, and only
> if—

1. the statute is intended to protect against the result of the violation;

2. the plaintiff is within the class intended to be protected by the statute; and

3. the evidence will support a finding that the violation was a proximate contributing cause of the occurrence. [Note on Use, SJI2d 12.01, Violation of Statute—Negligence; see also *Klanseck, supra.*][4]

I therefore agree with the lead opinion that a statutory-violation and statutory-purpose analysis should be employed to determine if an inference of "unreasonable" risk may be established from the violation of a statute and whether the plaintiff is within the class intended to be protected by the statute.

B

The lighted-vehicle statute requires certain lighting to be visible on a vehicle when it is parked upon a highway.

Whenever a vehicle is parked or stopped *upon a highway* . . . there shall be displayed . . . 1 or more lamps projecting a white or amber light visible . . . from a distance of 500 feet to the front of such vehicle and projecting a red light visible . . . from a distance of 500 feet to the rear . . . . [MCL 257.694; MSA 9.2394. Emphasis added.]

Plaintiff asserts this as part of the basis for recovery of benefits from the defendant; thus, it must be determined whether this statute is appli-

---

[4] This modified the requirements of the statutory purpose doctrine as they were stated in *Zeni v Anderson, supra.*

cable to the circumstances of this accident.[5] The automobile was parked upon the shoulder of the highway rather than upon the paved portion, therefore we first decide whether the vehicle was "upon a highway" as that phrase is used in the lighted-vehicle statute.

The term "highway" is uniformly defined in three different provisions within the Motor Vehicle Code.

> "Highway or street" means the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for *purposes of vehicular travel.* [MCL 257.20, 257.64, 257.1501(g); MSA 9.1820, 9.1864, 9.3200(1)(g). Emphasis added.]

This statutory definition of "highway" is broader in scope than the common understanding of that term which would be limited to the traveled or paved portion. *Roy v Dep't of Transportation,* 428 Mich 330; 408 NW2d 783 (1987). The statutory definition of the term "roadway" is closer to a lay person's belief of what constitutes a "highway."

> "Roadway" means that portion of a highway [or street] improved, designed, or ordinarily used for vehicular travel. [MCL 257.55, 257.1501(h); MSA 9.1855, 9.3200(1)(h).]

Therefore, if the Legislature had intended the lighted-vehicle statute application to be limited to the paved portion of the highway it could have used the phrase "upon a roadway" instead of "upon a highway."

---

[5] It should be noted that the majority asserts that it does not address the issue whether the lighted-vehicle statute is applicable to the motor vehicle involved in this accident because it was determined that the plaintiff was not a person within the class intended to be protected by the statute.

In *Ballinger v Smith,* 328 Mich 23, 32; 43 NW2d 49 (1950), this Court opined that the lighted-vehicle statute should apply to a motor vehicle parked on any portion of the right of way adapted, maintained, or intended for use of vehicular traffic.

> We think the statute in question here must be construed as requiring the displaying of lights, during the period specified, on a parked vehicle left on that part or portion of the right of way adapted and maintained or intended for the use of vehicular traffic in an ordinary and reasonable manner. One parking the vehicle might reasonably have been held to anticipate such use. [See also *Hoopingarner v Tucker Freight Lines, Inc,* 6 Mich App 429; 149 NW2d 219 (1967).]

Therefore, in deciding when a parked vehicle is "upon a highway," as that phrase is used in the lighted-vehicle statute, it must be determined whether that portion of the right of way where the vehicle is parked is subject to vehicular travel. If the parked vehicle is located on that portion of the right of way maintained or designed for vehicular travel, which has been extended as far as a gravel shoulder in *Ballinger,* the lighted-vehicle statute is applicable. Defendant-appellee asserts that the parked vehicle in this case could not be considered "upon the highway" because of the definition of "shoulder" enacted in 1974 PA 152, subsequent to the decisions in *Ballinger* and *Hoopingarner.*

> "Shoulder" means that portion of the highway contiguous to the roadway generally extending the contour of the roadway, *not designed for vehicular travel* but maintained for the temporary accommodation of disabled or stopped vehicles otherwise permitted on the roadway. [MCL 257.59a; MSA 9.1859(1). Emphasis added.]

This statutory definition of shoulder appears to state that shoulders are not designed for vehicular travel, thus not within the statutory definition of highway and in effect reversing the *Ballinger* decision. However, the Legislature also adopted a different statutory definition of "shoulder."

> "Shoulder" means that portion of a highway on either side of the roadway which is normally snow-plowed *for the safety and convenience of vehicular traffic.* [MCL 257.1501(k); MSA 9.3200(1)(k).[6] Emphasis added.]

These two statutory definitions of "shoulder" conflict since one states shoulders are not designed for vehicular travel while the other states they are for the safety and convenience of vehicular travel. This Court has addressed the conflict of these different statutory definitions of "shoulder" in the context of a governmental immunity case. See *Gregg v State Hwy Dep't,* 435 Mich 307; 458 NW2d 619 (1990). In *Gregg,* it was held that the shoulder of a highway was intended to accommodate vehicular travel, even if only for a brief amount of time.

> At the high speeds of modern vehicles, such an endeavor often results in significant travel, "in the ordinary sense," on the shoulder of a highway. Indeed, it seems quite extraordinary, if not fictional, to assume that vehicles do not travel on shoulders or that shoulders are not designed for vehicular travel, albeit of a temporary sort. [*Id.* at 315.]

Additionally, we noted the distinction between the statutory definition of "roadway" and "high-

---

[6] Interestingly, this definition of shoulder is located in the section of the Motor Vehicle Code which regulates the operation of a snowmobile, which was involved in the accident in this case.

way" to support the broad interpretation to be given the term "highway."

> More technically, the Motor Vehicle Code is quite precise in its definitions. It defines roadway quite narrowly as "that portion of a highway improved, designed, or ordinarily used for vehicular travel." On the other hand, it defines "[h]ighway or street . . . [as the] entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." If the Legislature had intended liability for the failure to maintain safe roadways only, it seems the Legislature would have done just that. It did not. [*Id.* at 315-316. Citations omitted.]

Therefore, from the standpoint of clear precedent and statutory development, I conclude that the phrase "upon a highway" that is used in the lighted-vehicle statute should include the entire width between the boundary lines, including the shoulder, which is subject to vehicular travel by the general public.[7] Since there is no factual dispute that the automobile was parked on the shoulder of the highway without its lights on, I would find that it was parked in violation of the statute.

C

Once it is determined that the lighted-vehicle statute is applicable to the motor vehicle involved in this case, it then must be decided whether plaintiff is within the class of persons intended to be protected by that statute. The lead opinion concluded that a "passenger on a snowmobile, traveling unlawfully on the shoulder of a high-

---

[7] Additionally, in *Gregg, supra* at 314, n 4, we cited *Ballinger* with apparent approval for requiring lamps to be displayed on a vehicle which is parked on a shoulder of a highway that was intended for the use of vehicles in an ordinary and reasonable manner.

way,[8] is not in the class of persons intended to be protected by the lighted-vehicle statute." *Ante,* p 214. The lead opinion also states that plaintiff is not within the class of persons intended to be protected by the lighted-vehicle statute since it was "designed to protect the safety of other vehicles traveling on a *roadway,*" citing a quotation from *Ballinger* in support of this proposition. *Ante,* p 214. However, it concedes that the language in *Ballinger* at 31, stated that the lighted-vehicle statute was intended to protect *traffic* on the *highway* and not merely the roadway.

> The purpose of the statutory requirement that vehicles parked on a highway at night should display lights of the character specified is obvious. It was intended to protect *traffic* on the *highway.* Its application also resulted in the protection of a parked vehicle. [Emphasis added.]

[8] We note that while a snowmobile may not be operated on the shoulder of the highway, it may be legally operated on the extreme right of the open portion of the right of way.

> A person *shall not operate* a snowmobile *upon a public highway* . . . not specifically designated for the use of snowmobiles except under the following conditions and circumstances:
> (a) A snowmobile *may be operated on the right of way of a public highway,* except a limited access highway, if it is operated at the *extreme right of the open portion of the right of way* and with the flow of traffic on the highway. [MCL 257.1512; MSA 9.3200(12). Emphasis added.]

> "Right of way" means that *portion of a highway* or street less the *roadway and any shoulder.* [MCL 257.1501(j); MSA 9.3200(1)(j). Emphasis added.]

Therefore, the operation of the snowmobile upon the shoulder of the highway in this case was contrary to MCL 257.1512; MSA 9.3200(12) since the shoulder is an excluded portion of the highway for the legal operation of a snowmobile. Thus, the snowmobile must have been operated "upon a highway" when it struck the automobile parked on the shoulder of the highway because the snowmobile is operated illegally only when it is operated upon certain portions of the highway.

It is apparently conceded by the lead opinion that the snowmobile must have been operated upon the highway in order to be considered as "illegal operation" of the snowmobile.[9] Thus whether the snowmobile constituted "traffic" on the highway when it collided with the automobile parked upon the shoulder of the highway is the remaining consideration for determining if the plaintiff was intended to be protected by the lighted-vehicle statute.

> "Traffic" means pedestrians, ridden or herded animals, *vehicles,* street cars and other conveyances either singly or together while *using any highway for purposes of travel.* [MCL 257.69; MSA 9.1869. Emphasis added.]

Therefore, the statutory definition of traffic includes all vehicles using a highway for the purpose of travel.[10] Therefore, the snowmobile traveling upon the shoulder of the highway constitutes traffic "upon a public highway" because it is a vehicle being operated on the public highway for the purpose of travel. The plaintiff, a passenger upon the snowmobile which collided with the automobile parked on the shoulder of the highway, must have been intended to be protected by the

---

[9] See n 8.

[10] A snowmobile constitutes a vehicle as that term is defined within the Motor Vehicle Code.

> "Snowmobile" means any motor driven vehicle designed for travel primarily on snow or ice of a type which utilizes sled type runners or skis . . . . [MCL 257.1501(e); MSA 9.3200(1)(e).]

> "Vehicle" means every device in, upon, or by which any person or property *is or may* be transported or drawn upon a highway, excepting devices exclusively moved by human power or used exclusively upon stationary rails or tracks and excepting a mobile home . . . . [MCL 257.79; MSA 9.1879. Emphasis added.]

lighted-vehicle statute since he constituted traffic traveling upon the public highway.

For the reasons stated above, I conclude that the statutory definition of shoulder does not preclude it from being considered a part of the "highway," as that term was defined in *Ballinger* and *Gregg*; thus, traffic on the shoulder of a highway, including the plaintiff, may be considered as being within the class intended to be protected by the lighted-vehicle statute.

D

The final issue in interpreting the "unreasonable risk" standard concerns how to factor in the injured party's conduct that contributed to the "bodily injury which occurred." In view of the fact that § 3106(1)(a) is not a standard to determine the fault of either party, or the comparative fault as between them, it is at this point, in my judgment, that the tort analogy breaks down.

The clear emphasis of this statutory standard is on the manner in which the vehicle is parked, not the manner in which it is struck. The question posed is whether the motor vehicle was parked in a manner that creates an "*unreasonable* risk of the bodily injury which *occurred*." It is not any risk but an *unreasonable* one, and not an injury that is reasonably or unreasonably incurred but an injury that *did* occur. The tort-like determination is focused on the parking event, not the injury-causing event.

Accordingly, I would pose the question as whether the owner of the automobile parked it in a manner that created an unreasonable risk of the event that *occurred*, namely, being struck by a snowmobile. The answer, of course, depends on whether it was in an area of the highway that is

frequented by snowmobiles and whether, for instance, it was summer or winter.[11] The insured automobile, parked as it was—in the nighttime without lights activated and facing in a direction that prevented the visibility of its reflector lights—did not create an unreasonable risk of being struck by an airplane falling from the sky, but it may well have created an unreasonable risk of the very event that occurred here.

In conclusion, I would only factor in the snowmobiler's conduct to the extent that it made what occurred unlikely or unforeseeable and thus made the parking circumstances reasonable rather than unreasonable.

E

It is a matter of judicial discretion whether violation of a statute is relevant to the issues involved in a particular case and whether an inference of negligence from violation of that statute is available to either party. See *Klanseck* and *Zeni, supra.* Therefore, the trial court should interpret the applicability of a particular parking statute, in light of the facts of the case presented, to determine if an inference of "unreasonable risk" should be permitted.

Therefore, I would hold that a claim for recovery of damages, pursuant to § 3106(1)(a) of the no-fault act and based upon violation of a parking statute, would require the statutory-purpose doctrine to be initially applied by the Court for a determination whether the cited parking statute was intended to address the situation presented in that particular case. If the statutory purpose of the relevant parking statute or ordinance was not

---

[11] We note that this accident occurred in January in Tuscola County, which is an area where it is not an uncommon phenomenon for snowmobiles to be operated on the side of the roadway.

intended to cover the particular situation or risk presented, summary disposition would be the appropriate remedy when that is the only basis for the claim under § 3106(1)(a). This analysis is in accord with part of the lead opinion; however, I do not feel that the granting of summary disposition was appropriate in this case in view of my conclusion that plaintiff was within the class of persons intended to be protected by the lighted-vehicle statute.

II

The determination whether "unreasonable risk" is a question of law or fact is more problematic, especially in light of our decision in *DiFranco v Pickard,* 427 Mich 32; 398 NW2d 896 (1986). The Court of Appeals panel determined that the question of "unreasonable risk" in § 3106(1)(a) is a matter of statutory construction for the court when the facts are not in dispute, relying upon *Autry v Allstate Ins Co,* 130 Mich App 585; 344 NW2d 588 (1983). The lead opinion adopts a similar approach regarding this issue, but attempts to distinguish between the *DiFranco* determination of "serious impairment of body function" and the determination of "unreasonable risk" predicated upon violation of a parking statute.

I am not as willing as the lead opinion to render an opinion in regard to whether the determination of "unreasonable risk" in § 3106(1)(a) is a question of law or fact. The Court of Appeals relied upon the *Autry* decision for its determination in regard to this issue; however, *Autry* is of questionable precedential authority after our decision in *DiFranco,* and the Court of Appeals in this case was

not presented with an opportunity to address the effect of *DiFranco* on *Autry*. Additionally, this issue, including the significance of our *DiFranco* decision, has not been presented for review by us by the parties.

Therefore, on the basis of the lack of consideration and analysis of our *DiFranco* opinion by the Court of Appeals, the failure of the parties to raise this issue for review, and the lack of briefing thereon, I would not address this issue.[12]

### III

I would vacate the Court of Appeals decision and reverse the findings of the trial court which held that the injury suffered by the plaintiff was not the type of harm intended to be protected by this parking statute and remand for redetermination of whether the automobile was parked in such a manner as to create an unreasonable risk of the bodily injury that occurred, in light of the inference of unreasonableness resulting from a statutory violation and in light of the statutory prohibi-

---

[12] In *Autry*, Judge KELLY stated, in his dissent, that the trier of fact should decide the question of "unreasonable risk":

> I merely note at this time one important distinction that I see between the serious impairment question and the parked car question. Unlike the term "serious impairment of body function [as defined in *Cassidy v McGovern*, 415 Mich 483; 330 NW2d 22 (1982)]," the term "parked in an unreasonable manner" is one that I would expect juries to clearly understand. In negligence actions, for example, reasonableness as a standard of care has always been reserved for the trier of fact. [*Id.* at 596.]

A similar analysis was employed by us in *DiFranco* regarding the "serious impairment of body function" question. Therefore, I believe it would be premature for us to claim that *DiFranco* has no effect upon the determination of "unreasonable risk" for § 3106(1)(a).

tion regarding a snowmobiler's presence on the shoulder of the highway.[13]

LEVIN, J., concurred with BRICKLEY, J.

MALLETT, J., took no part in the decision of this case.

---

[13] Upon remand, I would permit the parties to raise issues not previously presented for review by the lower courts, see n 3, and to argue, if they wish, whether the "unreasonable risk" determination should be a question of law or fact.