LEWIS v KROGOL

Docket No. 194313. Submitted December 3, 1997, at Detroit. Decided May
5, 1998, at 9:10 A.M. Leave to appeal sought.

Barbara and Teddy Lewis brought an action in the Wayne Circuit
Court against Phillip F. Krogol and others, alleging that medical
malpractice by the defendants resulted in permanent damage to
Barbara Lewis' spinal nerves, leaving her unable to walk without
assistance. The plaintiffs settled with all defendants other than Kro-
gol for more than $225,000. Krogol moved for summary disposition
with respect to the issue of damages, arguing that 1986 PA 178,
MCL 600.1483; MSA 27A.1483, limited recoverable damages for
noneconomic loss to $225,000 in the absence of any of the excep-
tions set by the statute and that none of those exceptions applied
to this case. The court, William J. Giovan, J., granted Krogol's
motion, specifically finding that a limb or organ was not wrongfully
removed and that a vital bodily function was not lost, either of
which, under the statute, would have excepted the plaintiffs from
the damages cap. The plaintiffs appealed.

The Court of Appeals *held*:

1. In a medical malpractice action subject to 1986 PA 178, but not
to 1993 PA 78, which amended MCL 600.1483; MSA 27A.1483 to
provide that it is to be decided by a judge as a matter of law
whether an exception to the cap for damages applies, a jury must
decide whether a plaintiff has lost a vital bodily function so as to
be excepted from the damages cap pursuant to MCL
600.1483(1)(g); MSA 27A.1483(1)(g) whenever reasonable minds
can differ about whether the plaintiff has lost a vital bodily func-
tion. For purposes of the statute, "vital" means "important," not
"necessary for life." In this case, because reasonable minds can dif-
fer with regard to whether the loss of the ability to walk is a loss of
a vital bodily function, the question is one for the trier of fact to
decide and the trial court thus erred in deciding the question.

2. The trial court did not err in deciding that no organ was
removed. MCL 600.1483(1)(f); MSA 27A.1483(1)(f). Reasonable
minds would agree that no organ was removed.

Reversed and remanded for further proceedings.

CAVANAGH, J., concurring in part and dissenting in part, agreed
that Barbara Lewis did not lose an organ, but disagreed that a jury
should decide whether she lost a vital bodily function. "Loss of a
vital bodily function" clearly means loss of a function necessary to
sustain life, something that loss of the ability to walk is not.

NEGLIGENCE — MEDICAL MALPRACTICE — NONECONOMIC DAMAGES — STATUTORY
   CAP.

Loss of a vital bodily function, as a circumstance that excepts a medi-
   cal malpractice plaintiff from the statutory cap for noneconomic
   damages, is to be decided by the trier of fact in those actions sub-
   ject to 1986 PA 178, but not to 1993 PA 78, whenever reasonable
   minds can differ with regard to whether a vital bodily function has
   been lost; "vital" means "important"; it does not mean "necessary to
   life" (MCL 600.1483[g]; 27A.1483[g]).

*Ishbia & Gagleard* (by *Michael A. Gagleard*), for
the plaintiffs.

*Beier Howlett, P.C.* (by *Amy D. Comito*), for the
defendant.

Before: KELLY, P.J., and CAVANAGH and N. J. LAMBROS*,
JJ.

N. J. LAMBROS, J. Plaintiff appeals as of right a cir-
cuit court order granting defendant's motion for sum-
mary disposition in this medical malpractice action.
At issue are the statutory limitations on noneconomic
damages in MCL 600.1483; MSA 27A.1483 as the provi-
sions existed before a 1993 amendment[1] became
effective. We reverse and remand.

MCL 600.1483; MSA 27A.1483 provided in part:

(1) In an action for damages alleging medical malpractice
   . . . damages for noneconomic loss which exceeds

_____

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] 1993 PA 78 rewrote this section effective April 1, 1994. Unless other-
wise indicated, references to the statute will be to the statute as it was
before April 1, 1994.

$225,000[2] shall not be awarded unless 1 or more of the following circumstances exist:

(a) There has been a death.

(b) There has been an intentional tort.

(c) A foreign object was wrongfully left in the body of the patient.

(d) The injury involved the reproductive system of the patient.

(e) The discovery of the existence of the claim was prevented by the fraudulent conduct of a health care provider.

(f) A limb or organ of the patient was wrongfully removed.

(g) The patient has lost a vital bodily function.

Plaintiffs Barbara Lewis (hereinafter Lewis) and her husband filed a complaint alleging medical malpractice and loss of consortium against defendant, as well as several other defendants. Plaintiffs' theory is that defendants' malpractice resulted in permanent damage to Lewis' spinal nerves, making her unable to walk without assistance. Plaintiffs settled their claims with all of the defendants except Krogol for $927,500.

Krogol filed a motion for partial summary disposition pursuant to MCR 2.116(C)(10) with regard to the issue of damages. Krogol asserted, and the trial court agreed, that none of the exceptions to the statutory cap was present in this case. The court questioned whether walking was a *vital* bodily function. According to the court, even if the description of Lewis' condition offered by plaintiffs' counsel was accepted, Lewis' inability to walk without assistance did not constitute a "loss of a vital bodily function." The court

---

[2] Pursuant to subsection 4 of the statute, this amount is adjusted to reflect the cumulative annual percentage increase in the consumer price index.

rejected the proposition that a vertebral body was an "organ" so as to fall within MCL 600.1483(1)(f); MSA 27A.1483(1)(f) and rejected plaintiffs' challenges to the constitutionality of the statutory cap. Because plaintiffs' settlement exceeded the statutory cap, the court ruled that the maximum damages to which plaintiffs would be entitled from Krogol was zero. The court determined that there was no genuine issue of material fact to submit to the jury and dismissed the action.

We conclude that the trial court erred in granting Krogol summary disposition because, under the circumstances, whether Lewis has lost a vital bodily function was an issue to be determined by the jury.

In the absence of any controlling legal authority examining the medical malpractice cap,[3] we turn to decisions concerning the no-fault act[4] for guidance regarding when the applicability of an exception to the statutory cap should be decided as a matter of law. Under the no-fault act, noneconomic losses may be recovered if the injured person suffered death, a serious impairment of body function, or permanent serious disfigurement. MCL 500.3135(1); MSA 24.13135(1). MCL 500.3135(2)(a); MSA 24.13135(2)(a), as it currently exists, sets forth when the determination of serious impairment of body function and permanent serious disfigurement are questions of law for the court. However, before the amendment of this section by 1995 PA 222, the statute was silent with

---

[3] MCL 600.2946a; MSA 27A.2946a, which applies to noneconomic damages in products liability actions, contains the phrase "permanent loss of a vital bodily function." However, we have found no published opinions interpreting the phrase in that statute.

[4] MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*

regard to this issue. In the absence of a legislative directive regarding the matter, the Supreme Court determined that, if reasonable minds could differ with regard to whether the plaintiff sustained a "serious impairment of a body function," the issue should be submitted to the trier of fact, even if there is no material factual dispute with respect to the nature and extent of the plaintiff's injuries. *DiFranco v Pickard*, 427 Mich 32; 398 NW2d 896 (1986).

Like the no-fault act before 1995 PA 222, the statute limiting noneconomic damages in medical malpractice actions was silent concerning whether the determination of an exception to the cap should be decided as a matter of law until 1993 PA 78.[5] As the Court did in *DiFranco*, we conclude that if reasonable minds could differ with regard to whether the plaintiff "has lost a vital bodily function," the issue should be submitted to the trier of fact, regardless of whether there is a material factual dispute about the nature and extent of the plaintiff's injuries.

Whether reasonable minds could differ with regard to whether Lewis lost a vital bodily function depends on how the term "vital" is defined. The term was not defined by the Legislature. *Random House Webster's College Dictionary* (1992) provides the following definitions arguably applicable in this instance: (1) "of, pertaining to, or necessary to life: *vital processes*," (2) "necessary to the existence, continuance, or well-being of something; indispensable; essential," (3) "of

---

[5] 1993 PA 78 made clear that the applicability of any of the exceptions to the statutory cap is decided by the court. After the amendment, MCL 600.6304(6); MSA 27A.6304(6) and MCL 600.1483; MSA 27A.1483 both indicate that the court must determine whether one or more of the exceptions apply.

critical importance; *vital decisions*." The meaning of
the word "vital" in the phrase "lost a vital bodily func-
tion" is critical to the outcome of this case. If vital
bodily functions are limited to those that are "neces-
sary to life," as argued by Krogol, then the court prop-
erly granted summary disposition because reasonable
minds could not differ that walking does not fall
within that definition. On the other hand, if as sug-
gested by plaintiffs, "vital" is defined as broadly as
"pertaining to . . . life," walking would be considered
"vital" and the issue should have been decided by the
jury.

We conclude that the Legislature did not intend the
phrase "loss of a vital bodily function" to mean loss of
a function "necessary to life." If construed in this
way, the exception becomes virtually redundant of
the first exception, "There has been a death." Krogol
suggests that one can lose a function necessary to
sustain life and still be alive. Krogol offers the exam-
ples of people on life support or dialysis and people
who receive transplants such as the heart, lungs, or
kidneys. We agree with Krogol that the Legislature's
use of the words "loss" and "vital" in this exception
indicate a higher threshold than in the no-fault act, in
which any body function need only be seriously
impaired. However, we conclude that a definition of
"vital" that basically restricts the exception to those
on life support or dialysis and those who received
transplants was not intended by the Legislature.

We also conclude that the Legislature did not
intend the phrase "loss of a vital bodily function" to
mean loss of a bodily function "pertaining to" life.
Because every body function pertains to life in some
way, defining vital in this way makes the word mere

surplusage. By including the word "vital," the Legislature indicated that not all injured patients who had lost a bodily function would be exempt from the cap.

We believe that the Legislature included the word "vital" to indicate the degree of importance that the lost bodily function must have in order for the exception to apply. In the context of the no-fault act limitation "serious impairment of body function," the Supreme Court held that the impaired body function need not be an *important* body function. *DiFranco, supra* at 39. If the word "vital" had been omitted from the statute, courts may have reached a similar result with respect to MCL 600.1483(1)(g); MSA 27A.1483(1)(g) and concluded that the loss of any bodily function came within the exception. The inclusion of the word "vital" was intended to restrict the applicability of the exception. However, we do not believe that the Legislature intended for the trier of fact to simply determine if loss of the function results in death, as would be the case if vital was defined as "necessary to life." Rather, we conclude that the Legislature included the term "vital" to restrict the exception to individuals who have lost bodily functions that are considered to have a high degree of importance. The Legislature uses the term "vital" as an indication of the level of importance in other statutes, such as MCL 2.101(2)(a); MSA 3.448(1)(2)(a) ("the expansion of the tourism industry is vital to the growth of the state's economy"), MCL 247.661(2)(i); MSA 9.1097(11)(2)(i) (referring to state transportation projects as "vital to the economy of the state"), and MCL 324.74102(1)(c); MSA 13A.74102(1)(c) ("Michigan state parks are . . .vital to local economies").

Krogol was not entitled to summary disposition because reasonable minds could differ regarding whether Lewis "has lost a vital bodily function." A trier of fact could reasonably conclude that walking is a vital bodily function and that Lewis "has lost" this function. Lewis testified that she is in a wheelchair "basically the whole day, other than to transfer to the couch." She can walk seventy-five to one hundred feet if she has something "to hang onto." She uses a walker when she "go[es] in and out of doors." Her legs can hold her weight for "a short time." Although she is able to walk to some extent with the aid of a walker, we believe that reasonable minds could differ regarding whether she "has lost" the ability to walk. Accordingly, the issue must be resolved by the trier of fact.

We reject plaintiffs' argument that the exception in subsection f applies. Reasonable minds would agree that no "organ" of Lewis was "removed."

In light of our determination that the issue whether Lewis has lost a vital bodily function should be resolved by a jury, we need not address plaintiffs' claims that summary disposition should not have been granted because Krogol's motion was not adequately supported by an appropriate affidavit.

We also decline to address plaintiffs' constitutional challenges to MCL 600.1483; MSA 27A.1483 and their argument that the provision discriminates against the disabled contrary to provisions of the Americans With Disabilities Act[6] (ADA). "Constitutional questions are not dealt with hypothetically or in the abstract." *Citizens For Pretrial Justice v Goldfarb*, 415 Mich 255,

---

[6] 42 USC 12101 *et seq.*

273; 327 NW2d 910 (1982). Unless and until a jury (1) renders a verdict in plaintiffs' favor, (2) determines that Lewis has not lost a vital bodily function, *and* (3) awards noneconomic damages in excess of the statutory cap, plaintiffs' cannot properly assert that the statute has infringed on their constitutional rights. The jury's failure to do any of the above will render unnecessary any decision about the constitutionality of the statute because its provisions will not have affected plaintiffs' recovery. Therefore, resolution of the constitutional challenges are premature at this time. See also *Ryan v Ore Lake*, 56 Mich App 162; 223 NW2d 637 (1974). Similarly, we conclude that plaintiffs cannot properly argue that MCL 600.1483(1); MSA 27A.1483(1) violates the ADA unless and until the provisions of MCL 600.1483(1); MSA 27A.1483(1) result in diminution of plaintiffs' recovery.

The order granting Krogol summary disposition is reversed and the case is remanded for further proceedings. We do not retain jurisdiction.

KELLY, P.J., concurred.

CAVANAGH, J. (*concurring in part and dissenting in part*). I concur with the majority's conclusion that plaintiff has not lost an organ, and hence the exception in MCL 600.1483(1)(f); MSA 27A.1483(1)(f) does not apply in this case. However, I respectfully dissent from the majority's interpretation of the phrase "vital bodily function" in MCL 600.1483(1)(g); MSA 27A.1483(1)(g) and from its conclusion that the determination whether plaintiff has lost a vital bodily function is a jury question.

At the time of plaintiff's alleged injuries,[1] MCL
600.1483(1); MSA 27A.1483(1) provided in pertinent
part:

> In an action for damages alleging medical malpractice . . .
> damages for noneconomic loss which exceeds $225,000.00
> shall not be awarded unless 1 or more of the following cir-
> cumstances exist:
>
>       *    *    *
>
> (g) The patient has lost a vital bodily function.

The majority concludes that the issue whether the
plaintiff has lost a vital bodily function should be sub-
mitted to the trier of fact, regardless of whether there
is a material factual dispute about the nature and
extent of the injuries. However, it is well settled that
statutory interpretation is a question of law for the
court to determine. See, e.g., *Putkamer v Transamer-
ica Ins Corp of America*, 454 Mich 626, 631; 563
NW2d 683 (1997); *Cardinal Mooney High School v
Michigan High School Athletic Ass'n*, 437 Mich 75, 80;
467 NW2d 21 (1991); *Rose Hill Center, Inc v Holly
Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997). Like-
wise, where the facts are undisputed, applying a stat-
ute to the facts is an issue of law for the court. *Wills
v State Farm Ins Cos*, 437 Mich 205, 213; 468 NW2d
511 (1991) (Cavanagh, C.J.); *Marcelle v Taubman*, 224
Mich App 215, 217; 568 NW2d 393 (1997).

It is true that the Supreme Court departed from this
general rule in *DiFranco v Pickard*, 427 Mich 32; 398
NW2d 896 (1986). In *DiFranco*, which arose under
the no-fault act,[2] the Court held, "If reasonable minds

---

[1] The statute was amended by 1993 PA 78, effective April 1, 1994.

[2] MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*

can differ as to whether the plaintiff suffered a serious impairment of bodily function, the issue must be submitted to the jury, even if the evidentiary facts are undisputed." *Id.* at 58. However, such an abandonment of the customary rule requiring the jury to decide the facts and the judge to construe the law is appropriate only where "compelling reasons" exist. *Wills, supra* at 210.

Subsequently, the Legislature amended the no-fault act to specifically provide that where there is no factual dispute concerning the nature and extent of the plaintiff's injuries, the question whether the person has suffered a serious impairment of bodily function is a question of law for the court. See 1995 PA 222, codified at MCL 500.3135(2)(a); MSA 24.13135(2)(a). In amending the law, the Legislature reasoned that the change would "produce more uniformity in decisions by allowing the judge to construct the statute rather than juries, which are more likely to vary in attitude based on geography or even one jury to the next." House Legislative Analysis, HB 4341, December 18, 1995.

Furthermore, a primary reason for the Supreme Court's departure in *DiFranco* from the general rule that statutory interpretation is a question of law for the court was its conclusion that the term "serious impairment" is not readily definable. *DiFranco, supra* at 50. Although it is not defined in the statute, I do not believe that the phrase "vital bodily function" is similarly ambiguous.

In interpreting statutes, undefined words should be accorded their common and approved usage. MCL 8.3a; MSA 2.212(1); *Putkamer, supra* at 631. When, as in this case, a word is not defined in the statute, a

court may consult dictionary definitions. *Marcelle, supra* at 219. According to *Random House Webster's College Dictionary* (1992) "vital" means "1. of, pertaining to, or necessary to life . . . 3. necessary to the existence, continuance, or well-being of something; indispensable; essential." *The American Heritage Dictionary: Second College Edition* defines "vital" as "Necessary to the continuation of life; life-sustaining." In the Attorneys' Dictionary of Medicine, "vital" is defined as "Essential to life; pertaining to life."

Given these definitions, I find unpersuasive the majority's contention that the word "vital" is ambiguous. The phrase "loss of a vital bodily function" clearly means the loss of a function necessary to sustain life. While few, if any, would argue that the ability to walk is not an important bodily function, the ability to walk is not necessary to the continuation of life. Many people survive without the ability to walk. The majority's contention that walking can be considered a "vital bodily function" is contrary to the common and approved usage of the words.

Furthermore, after finding that the phrase "vital bodily function" is ambiguous, the majority concludes, without any citation whatsoever, that the Legislature did not mean the phrase "loss of a vital bodily function" to mean loss of a function "necessary to life." The majority merely asserts that a "definition of 'vital' that basically restricts the exception to those on life support or dialysis and those who received transplants was not intended by the Legislature." *Ante* at 488. However, if the language used is clear, then the Legislature must have intended the meaning it has plainly expressed, and the statute must be enforced as written. *Nation v W D E Electric Co*, 454 Mich 489,

494; 563 NW2d 233 (1997); *Sanders v Delton Kellogg Schools*, 453 Mich 483, 487; 556 NW2d 467 (1996). While the majority may prefer that the Legislature had chosen a less strict standard, the wisdom of the provision at issue is not a matter for our review. *Jennings v Southwood*, 446 Mich 125, 142; 521 NW2d 230 (1994); *American States Ins Co v Dep't of Treasury*, 220 Mich App 586, 597; 560 NW2d 644 (1996).

Finally, plaintiff claims that MCL 600.1483; MSA 27A.1483 violates both the constitution and the Americans With Disabilities Act, 42 USC 12101 *et seq.* I concur in the majority's conclusion that these issues are not ripe for our review.

I would affirm the trial court order granting defendant's motion for summary disposition.